S04G1413. INNOVATIVE CLINICAL & CONSULTING
SERVICES, LLC v. FIRST NATIONAL BANK OF AMES, IOWA.
(620 SE2d 352)

HUNSTEIN, Presiding Justice.

We granted certiorari from the holding in *First Nat. Bank of Ames, Iowa v. Innovative Clinical & Consulting Svcs., LLC*, 266 Ga.

App. 842 (598 SE2d 530) (2004) to address perceived inconsistencies in our precedents defining the scope of personal jurisdiction that Georgia courts may exercise over nonresidents pursuant to OCGA § 9-10-91, the Georgia long-arm statute. We reiterate our holding in *Gust v. Flint*, 257 Ga. 129 (356 SE2d 513) (1987), that "[t]he rule that controls is our statute, which requires that an out-of-state defendant must do certain acts within the State of Georgia before he can be subjected to personal jurisdiction." Id. at 130. However, because as set forth below we conclude that our earlier opinions have unduly limited the literal language of OCGA § 9-10-91, we reverse in part the holding of the Court of Appeals and remand this case for further consideration by that court.

OCGA § 9-10-91 provides in pertinent part that a court of this State

> may exercise personal jurisdiction over any nonresident . . . , as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he were a resident of the state, if in person or through an agent, he:
> (1) Transacts any business within this state;
> (2) Commits a tortious act or omission within this state . . . ;
> (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state; . . .

Prior to our holding in *Gust*, this Court in *Clarkson Power Flow v. Thompson*, 244 Ga. 300, 301 (260 SE2d 9) (1979) expanded subsection (2) to encompass nonresidents in those situations where the cause of action arising from injury in Georgia resulted from a tortious act or omission occurring outside this State, see also *Shellenberger v. Tanner*, 138 Ga. App. 399 (2) (227 SE2d 266) (1976), holding that there was "no essential difference" between subsections (2) and (3). *Clarkson Power Flow*, supra at 301. Because subsection (2), unlike subsection (3), contained no explicit legislative limiting conditions, we held that subsection (2) was constrained only by, and thus was co-extensive with, the Fourteenth Amendment of the U. S. Constitution. *Coe & Payne Co. v. Wood-Mosaic Corp.*, 230 Ga. 58, 61-62 (195 SE2d 399) (1973). See also *First United Bank of Miss. v. First Nat. Bank of Atlanta*, 255 Ga. 505, 506 (340 SE2d 597) (1986). In *Gust* the Court rejected these cases and returned to a "literal construction" of OCGA

§ 9-10-91, *Gust,* supra, 257 Ga. at 130, thus holding that a nonresident "must do certain acts" as delineated by the statute before the nonresident could be subjected to personal jurisdiction in Georgia. Id. This holding reinstated the difference between subsections (2) and (3) established by the literal language of the statute. Thus, under subsection (2) a Georgia court may exercise personal jurisdiction over a nonresident who commits a tortious act or omission within this State,[1] insofar as the exercise of that personal jurisdiction comports with constitutional due process; and under subsection (3) a Georgia court may exercise personal jurisdiction over a nonresident who commits a tortious injury in Georgia caused by an act or omission outside Georgia only if the tortfeasor "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state," notwithstanding that these limiting conditions may preclude a Georgia court from exercising personal jurisdiction over the nonresident to the fullest extent permitted by constitutional due process. *Gust,* supra.[2]

For over 17 years the justices of this Court and the judges of the Court of Appeals have urged the Legislature to amend Georgia's long-arm statute so as to provide the maximum protection for Georgia residents damaged by the out-of-state acts or omissions committed by nonresident tortfeasors. See *Gust,* supra, 257 Ga. at 130 (Gregory, J., concurring); *Phears v. Doyne,* 220 Ga. App. 550, 552 (470 SE2d 236) (1996) (Beasley, C. J., concurring specially). Despite the eloquence of these pleas, the Legislature has chosen to retain the statutory limitations on in personam jurisdiction set forth in OCGA § 9-10-91 (3). In our system of checks and balances, it is as inappropriate for the judicial branch to encroach upon the powers of the legislative or executive branches as it would be for either of those branches to

---

[1] The Legislature provided only one exception to subsection (2), namely, actions for defamation of character arising from the tortious act.

[2] Dicta in footnote 1 in *Allstate Ins. Co. v. Klein,* 262 Ga. 599 (422 SE2d 863) (1992), a case involving jurisdiction over a defendant who was a Georgia resident so that OCGA § 9-10-91 was wholly inapplicable, does not support a different conclusion because that footnote cited only to cases rendered prior to *Gust,* supra. Although the Federal courts persist in reiterating the language from *First United Bank of Miss.,* supra, that Georgia's long-arm statute confers in personam jurisdiction to the maximum extent allowed by the due process clause of the U. S. Constitution, e.g., *Francosteel Corp. v. M/V Charm,* 19 F3d 624 (IV) (11th Cir. 1994), the *First United* holding was superseded by *Gust,* supra. The Eleventh Circuit's interpretation of OCGA § 9-10-91 is not binding on this Court and it is not necessary for this Court to correct erroneous Federal interpretations of our State's statutes for the precedential value of our opinions to remain the controlling authority on the proper interpretation of those statutes. See contra *Carekeeper Software Dev. Co. v. Silver,* 46 FSupp.2d 1366, 1369, n. 1 (N.D. Ga. 1999) (following the erroneous interpretation given OCGA § 9-10-91 by *Francosteel,* supra, because the district court "has not found any contrary Georgia Supreme Court authority decided since the Eleventh Circuit's decision" in that case).

encroach upon the powers of the judicial branch. Thus, contrary to the statements in Division 3 of the Court of Appeals' opinion below, the fact that Georgians damaged by nonresidents are deprived of a forum in this State to the fullest extent permitted by due process is not the result of court decisions interpreting OCGA § 9-10-91 (3) but the result of the plain and unambiguous language of OCGA § 9-10-91. The courts cannot reject the plain language of a statute unless it will lead to unreasonable consequences or absurd results not contemplated by the Legislature. See generally *Haugen v. Henry County*, 277 Ga. 743 (2) (594 SE2d 324) (2004); *Hollowell v. Jove*, 247 Ga. 678, 681 (279 SE2d 430) (1981). Accordingly, under these circumstances, the courts may not interpret OCGA § 9-10-91 to provide what the Legislature chose to omit.

However, our holding in *Gust* necessarily affects the construction heretofore applied to subsection (1) of OCGA § 9-10-91. That subsection authorizes a Georgia court to exercise personal jurisdiction over a nonresident who "[t]ransacts any business within" Georgia. As is the case with subsection (2), there are no explicit legislative limiting conditions on this language. Nothing in subsection (1) limits its application to contract cases, but see *Whitaker v. Krestmark of Alabama, Inc.*, 157 Ga. App. 536 (1) (278 SE2d 116) (1981); nothing in subsection (1) requires the physical presence of the nonresident in Georgia or minimizes the import of a nonresident's intangible contacts with the State. But see *Wise v. State Bd. &c. of Architects*, 247 Ga. 206, 209 (274 SE2d 544) (1981). Although Georgia courts have engrafted these and other requirements onto subsection (1), such requirements conflict with the literal language of the statute. To be consistent with *Gust* and the well-established rules of statutory interpretation that preclude judicial construction of plain and unambiguous statutory language, *Six Flags Over Ga. II v. Kull*, 276 Ga. 210, 211 (576 SE2d 880) (2003), we must give the same literal construction to subsection (1) of OCGA § 9-10-91 that we give to the other subsections. Accordingly, under that literal construction, OCGA § 9-10-91 (1) grants Georgia courts the unlimited authority to exercise personal jurisdiction over any nonresident who transacts any business in this State. Of course, because this statutory language would expand the personal jurisdiction of Georgia courts beyond that permitted by constitutional due process, we accordingly construe subsection (1) as reaching only "to the maximum extent permitted by procedural due process." *Coe & Payne Co.*, supra, 230 Ga. at 60. See generally *Beasley v. Beasley*, 260 Ga. 419, 421 (396 SE2d 222) (1990) (explicating the minimum contacts required for proper exercise of long-arm jurisdiction). See also *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U. S. 102 (II) (A) (107 SC 1026, 94 LE2d 92) (1987) (due process clause of the Fourteenth Amendment constrains

states' exercise of personal jurisdiction over nonresidents). We hereby overrule all prior cases that fail to accord the appropriate breadth to the construction of the "transacting any business" language of OCGA § 9-10-91 (1).

The Court of Appeals in this case correctly recognized that the trial court did not have personal jurisdiction over the Iowa bank under subsections (2) and (3) of OCGA § 9-10-91 because no question of fact remains[3] that the Iowa bank did not commit a tortious act within Georgia and that the Iowa bank does not regularly conduct or solicit business in Georgia, engage in any other persistent course of conduct in Georgia or otherwise derive substantial revenue from goods used or consumed or services rendered in Georgia.[4] However, because it was bound by prior precedent, the Court of Appeals did not fully consider whether the trial court had personal jurisdiction over the Iowa bank under OCGA § 9-10-91 (1), limiting its review to ICCS's breach of contract claim and that evidence establishing the lack of physical contacts (i.e., the presence of only postal and telephonic contacts) to connect the Iowa bank with Georgia. That limited review is no longer appropriate. Therefore, we affirm Division 2 of the Court of Appeals' opinion; disapprove the language in Division 3; and vacate and remand Division 1 to the Court of Appeals for action not inconsistent with this opinion.

*Judgment affirmed in part, vacated in part and case remanded with direction. All the Justices concur.*

DECIDED OCTOBER 3, 2005.

*Raiford & Dixon, Tyler Dixon*, for appellant.
*Powell Goldstein, William V. Custer IV, Jennifer B. Dempsey*, for appellee.

---

[3] The facts of this case are more fully set forth in *First Nat. Bank of Ames, Iowa*, supra, 266 Ga. App. at 842-843.

[4] While OCGA § 9-10-91 (1) requires only that the nonresident transact *any* business in Georgia, subsection (3) requires "regular," "persistent" or "substantial" contact with this State in order for Georgia courts to exercise personal jurisdiction over nonresident tortfeasors.