A06A0741. AERO TOY STORE, LLC v. GRIEVES.
(631 SE2d 734)

PHIPPS, Judge.

Gordon Grieves, a Georgia resident, sued Aero Toy Store, a Florida limited liability company, for fraud and breach of contract arising from Grieves's purchase of an automobile from Aero over the Internet. Claiming inadequate contacts with Georgia and relying on a clause in the purchase agreement selecting Florida as the forum for any litigation, Aero moved to dismiss for lack of personal jurisdiction and improper venue. The State Court of Cobb County denied Aero's motion. We granted Aero's application for interlocutory appeal. Upon consideration, we affirm.

While conducting an Internet search of the eBay Motors auction website, Grieves identified a 2001 BMW car being offered for sale. The website contained a lengthy description of the BMW and its features. And it provided an "Ask seller a question" button that, when activated, identified Juan Almeida as the seller's agent. On or about April 13, 2004, Grieves began making e-mail inquiries to Almeida concerning the car. Almeida responded to Grieves with various e-mails. In one of them, Almeida informed Grieves that the car came with a four year/50,000 mile factory warranty that would expire in about ten months, thereby obviating the need for a 1,000 mile warranty offered by eBay.

Grieves asserts that, in reliance on Almeida's promises and representations, he calculated his winning bid and that, after Almeida faxed copies of the purchase agreement to him, he signed the agreement, faxed it back to Almeida, and mailed a check to Aero in payment of the $31,926 purchase price. Grieves later brought this suit against Aero for making numerous material misrepresentations concerning the car.

In support of its motion to dismiss, Aero tendered an affidavit of its automotive manager, George Barber, to show that it does not have any agents, representatives, officers, or employees in Georgia; that it is not licensed to do business in Georgia; that it does not own or rent property in Georgia; that it does not maintain an office in Georgia; and that it has no subsidiaries or business affiliates in Georgia. In his affidavit, Barber also showed that the first page of the two-page "purchase agreement/bill of sale" signed by Grieves contains an acknowledgment that he had read and understood the terms and conditions set forth on the reverse side (or second page) of the agreement; and that, in paragraph 12 on the reverse side of the agreement, the parties agreed that the agreement was made in Florida, that it would be governed by Florida law, and that any action or proceeding arising out of the transaction would be litigated only in a Florida court.

Grieves filed a response to Aero's motion to dismiss, asserting that he had not agreed to paragraph 12. To support this assertion, Grieves submitted various e-mails between himself and Almeida: (1) In the first, dated April 21, 2004, Grieves acknowledged receipt of the purchase agreement but noted that no printed information appeared on the back of it. (2) Almeida responded with an e-mail, dated April 23, in which he stated, "We will send you the printed information on the back of the buyers order although it really does not apply to you as this vehicle comes with factory warranty." (3) In an e-mail dated April 27, Grieves informed Almeida that he wanted to proceed with the purchase and that he would fax back "your revised bill of sale once received."

By affidavit, Grieves testified that the bill of sale faxed back to him contained only the front page of the document, which he signed on or about April 28. Almeida executed a counter-affidavit in which he testified that, as stated by him in his April 23 e-mail to Grieves, he did have faxed both the front and reverse sides of the bill of sale to Grieves before Grieves signed the bill of sale on April 28.

In response to Grieves's discovery requests, Aero maintained that, since its formation in 2002, through eBay or otherwise it had made only two Internet sales to persons in Georgia totaling $193,199, amounting to less than one-half of one percent of its gross revenues of $553,351,314 for the years 2002 through 2004. Grieves, however, presented the results of an Internet search showing that from November 2003 until February 2005 at least 11 individuals from Georgia had submitted the high bids on cars being offered by Aero on eBay. Aero asserts that, notwithstanding the submission of those eleven high bids, no more than two purchases were consummated.

In denying Aero's motion to dismiss, the state court found that Aero purposefully transacted business in Georgia when its agent

conducted business negotiations with Grieves who lived in Georgia and when Aero delivered the vehicle to Grieves in Georgia, so as to have established sufficient minimum contacts with Georgia to authorize Georgia's exercise of personal jurisdiction over Aero under our Long Arm Statute.

1. Aero challenges the state court's determination that it had established sufficient minimum contacts with this state under our Long Arm Statute.

Resolution of this issue requires us to examine paragraphs (1), (2), and (3) of the Long Arm Statute, review the traditional three-part test used in determining whether long arm jurisdiction exists based on the transaction of business, review application of the test in cases beginning with *Coe & Payne Co. v. Wood-Mosaic Corp.*[1] and ending with *Innovative Clinical & Consulting Services v. First Nat. Bank,*[2] and then review a test developed in other jurisdictions for determining the existence of minimum contacts in cases involving the Internet.

Paragraphs (1) through (5) of the Long Arm Statute, codified at OCGA § 9-10-91, delineate the circumstances in which a court of this state may exercise personal jurisdiction over a nonresident. Paragraph (1) authorizes the exercise of such jurisdiction where the nonresident "[t]ransacts any business within this state." Paragraph (2) generally provides for Georgia courts' exercise of personal jurisdiction over a nonresident who "[c]ommits a tortious act or omission within this state." And long arm jurisdiction exists under paragraph (3) if the nonresident "[c]ommits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state."

In considering whether a Georgia court may exercise jurisdiction over a nonresident based on the transaction of business, we apply a three-part test: Jurisdiction exists on the basis of transacting business in this state if (1) the nonresident defendant has purposefully done some act or consummated some transaction in this state, (2) if the cause of action arises from or is connected with such act or transaction, and (3) if the exercise of jurisdiction by the courts of

---

[1] 125 Ga. App. 845 (189 SE2d 459) (1972).
[2] 279 Ga. 672 (620 SE2d 352) (2005).

this state does not offend traditional fairness and substantial justice.[3]

The initial two prongs of the jurisdictional test are used to determine whether defendant has established the minimum contacts necessary for the exercise of jurisdiction. If a defendant has established minimum contacts, the court may then evaluate other factors that impact on the reasonableness of asserting jurisdiction, such as the burden on defendant, the forum state's interest in adjudicating the dispute, plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution to controversies, and the shared interest of the states in furthering substantive social policies.[4]

The application of (the minimum contacts) rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.[5]

In the early case of *Coe & Payne Co. v. Wood-Mosaic Corp.*,[6] this court, guided by other provisions of Georgia law, construed the "transacting any business" provision in paragraph (1) of the Long Arm Statute restrictively, so as to exclude situations in which a nonresident does not solicit business in this state, accepts mail orders in another state, and does nothing more than deliver the items here. *Flint v. Gust*,[7] and *Phears v. Doyne*[8] later held

that an out-of-state defendant will not be deemed to have engaged in purposeful business activity in this state merely because he has advertised products for sale in national trade magazines circulating in this state and has accepted orders

---

[3] *Robertson v. CRI*, 267 Ga. App. 757, 759 (601 SE2d 163) (2004) (punctuation and footnote omitted).

[4] Id. at 762 (punctuation and footnote omitted).

[5] *Stuart v. Peykan, Inc.*, 261 Ga. App. 46, 49 (1) (581 SE2d 609) (2003) (citation and punctuation omitted).

[6] Supra, 125 Ga. App. at 855-858 (2), rev'd on other grounds, *Coe & Payne Co. v. Wood-Mosaic Corp.*, 230 Ga. 58, 61 (195 SE2d 399) (1973) (interpreting paragraph (2) of the Long Arm Statute to apply where negligence outside the state resulted in damage inside the state), rev'd on other grounds, *Gust v. Flint*, 257 Ga. 129 (356 SE2d 513) (1987) (holding that under the literal language of our Long Arm Statute, jurisdiction cannot be exercised over a nonresident whose negligence outside the state results in damage inside the state if the defendant has done none of the acts set forth in paragraph (3)).

[7] 180 Ga. App. 904 (351 SE2d 95) (1986), rev'd on other grounds, *Gust v. Flint*, supra.

[8] 220 Ga. App. 550 (470 SE2d 236) (1996).

for such products which have been transmitted to him from this state by mail, telephone, or other instrumentality of interstate commerce in response to such advertisements.[9]

After *Coe & Payne* was decided, the rule thus emerged that mere telephone or mail contact with an out-of-state defendant is insufficient to establish the purposeful activity with Georgia required by the Long Arm Statute.[10] This rule was relied on in cases such as *Mayacamas Corp. v. Gulfstream Aerospace Corp.*,[11] in application of the holding of the Supreme Court of the United States in *Burger King Corp. v. Rudzewicz*[12]

that an individual's contract with an out-of-state party alone cannot automatically establish sufficient minimum contacts in the other party's home forum and that the contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction. It is these factors — prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing — that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.[13]

---

[9] Id. at 551 (1) (punctuation omitted), citing *Flint*, supra, 180 Ga. App. at 905 (1); compare *Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc.*, 786 F2d 1055, 1059 (11th Cir. 1986) (recognizing that a nonresident seller soliciting the right to ship goods into a state establishes a more substantial contact with the state than a nonresident purchaser who solicits a resident seller to ship goods outside the state).

[10] E.g., *Wise v. State Bd. &c. of Architects*, 247 Ga. 206, 209-210 (2) (274 SE2d 544) (1981); *Mayacamas Corp. v. Gulfstream Aerospace Corp.*, 190 Ga. App. 892, 893 (1) (380 SE2d 303) (1989).

[11] Supra.

[12] 471 U. S. 462 (105 SC 2174, 85 LE2d 528) (1985).

[13] *Mayacamas*, supra, 190 Ga. App. at 893 (1) (punctuation and emphasis omitted), citing *Burger King*, supra, 471 U. S. at 479; see also *Object Technologies v. Marlabs, Inc.*, 246 Ga. App. 202, 202-203 (1) (540 SE2d 216) (2000) (minimum contacts lacking in Georgia where resident plaintiff contracted to provide nonresident defendant with a temporary employee in nonresident's state, and nonresident's only tie to Georgia was conducting contract negotiations with resident on the phone or through the Internet, mail, or fax) (physical precedent only); *ETS Payphone v. TK Indus.*, 236 Ga. App. 713, 714-715 (1) (513 SE2d 257) (1999) (minimum contacts lacking in Georgia where Georgia corporation negotiated contract with Florida corporation on the telephone or via mail or fax for performance of a contract in New York); *Beverage Mgmt. Solutions v. Yankee Spirits*, 218 Ga. App. 95 (1) (460 SE2d 564) (1995) (negotiation and consummation of contract between Georgia corporation and Massachusetts corporation by telephone, fax, and mail insufficient to give Georgia personal jurisdiction over Massachusetts corporation for breach of contract, where contract performance was to take place in Massachusetts); *Francosteel Corp. v. M/V Charm*, 19 F3d 624 (11th Cir. 1994) (minimum contacts lacking in Georgia where nonresidents contracted outside Georgia for delivery of goods to Georgia port and vessel carrying goods sank in transit).

In *Wise v. State Bd. &c. of Architects*,[14] the rule concerning telephone or mail contact was applied in a more mechanical fashion to deny the Georgia court personal jurisdiction over a nonresident defendant — even though Georgia's exercise of such jurisdiction was not inconsistent with *Burger King* and, in addition to telephone and mail contacts, the defendant had other intangible, business-related contacts with Georgia related to the suit.[15] But *J. C. Penney Co. v. Malouf Co.*[16] and *Patron Aviation v. Teledyne Indus.*[17] held that placement of merchandise in the stream of commerce for eventual retail sale to Georgia citizens, along with a warranty/indemnity contract, amounted to "transacting any business" in Georgia under paragraph (1) of our Long Arm Statute. *E. Howard St. Clair & Assoc. v. Northwest Carpets*[18] recognized the possibility that a nonresident defendant might establish sufficient minimum contacts by placing goods into the stream of commerce and shipping them into a state in which the nonresident solicits business. *Prosser v. Hancock Bus Sales*[19] effectively applied *Burger King* rules in finding that Georgia had personal jurisdiction over a nonresident defendant who had contracted for the sale and delivery of school buses into this state, came into the state to accept delivery but issued a dishonored check as payment, and was later sued for nonpayment.

And in *Innovative Clinical & Consulting Services v. First Nat. Bank*,[20] our Supreme Court disapproved the *Coe & Payne* and *Wise* lines of cases. In essence, the Court concluded that those cases had imposed limitations on our exercise of long arm jurisdiction beyond the minimum required by either the plain language of the Long Arm Statute or the constitutional requirements of due process. *Innovative Clinical* determined that these earlier cases conflicted with the principle that the Long Arm Statute contemplates exercise of jurisdiction to the maximum extent permitted by procedural due process,[21] and also with the principle that a single event may be a sufficient basis for the exercise of long arm jurisdiction if its effects within the forum are substantial enough even though the nonresident has never been physically present in the state.[22] Because paragraph (1) of the Long Arm Statute does not by its terms require

---

[14] Supra.

[15] See *Wise*, supra, 247 Ga. at 211-212 (Smith, J., concurring specially).

[16] 230 Ga. 140, 143 (196 SE2d 145) (1973).

[17] 154 Ga. App. 13, 14 (1) (267 SE2d 274) (1980).

[18] 237 Ga. App. 537 (515 SE2d 660) (1999).

[19] 181 Ga. App. 642 (353 SE2d 529) (1987).

[20] Supra.

[21] E.g., *First United Bank v. First Nat. Bank*, 255 Ga. 505, 506 (340 SE2d 597) (1986).

[22] *Shellenberger v. Tanner*, 138 Ga. App. 399, 404 (1) (227 SE2d 266) (1976).

additional contacts with the state such as those set forth in paragraph (3) (i.e., regular solicitation of business in this state, derivation of substantial revenue from goods sold or services provided in this state), *Innovative Clinical* held that such requirements should be imposed under paragraph (1) only to the extent required by due process.

*Pratt & Whitney Canada v. Sanders*[23] is of particular interest because it illuminates the distinction between the concepts of "specific jurisdiction" and "general jurisdiction." An examination of these concepts is necessary to an understanding of how general business contacts between the nonresident and forum state factor into the minimum contacts analysis.

> When a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum, the State has been said to be exercising general jurisdiction over the defendant. Conversely, when a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum, the State is exercising specific jurisdiction over the defendant.[24]

Even though the nonresident defendant in *Pratt & Whitney* engaged in extensive commercial activities in Georgia, the majority found the contacts insufficient to support the exercise of personal jurisdiction because the suit did not arise out of those activities. The dissent found the exercise of general, though not specific, jurisdiction warranted nonetheless. In her special concurrence, however, then Chief Judge Beasley noted that under the Georgia Long Arm Statute, the cause of action must arise from the nonresident's activities in Georgia in any case (so that the exercise of general jurisdiction over a nonresident defendant is unauthorized).[25]

Regularly doing or soliciting business in the state, deriving substantial revenue from goods or services in the state, having agents or representatives or officers or employees in the state, maintaining an office in the state, and having subsidiaries or business affiliates in the state are factors most directly relevant to the existence of general jurisdiction.[26] Factors such as regularly doing or soliciting business, or deriving substantial revenue from goods or services, in this state

---

[23] 218 Ga. App. 1 (460 SE2d 94) (1995).

[24] Id. at 7 (McMurray, P. J., dissenting) (citations and punctuation omitted).

[25] Id. at 5, citing *Allstate Ins. Co. v. Klein*, 262 Ga. 599, 600 (422 SE2d 863) (1992).

[26] See *Soma Med. Intl. v. Standard Chartered Bank*, 196 F3d 1292, 1295-1296 (10th Cir. 1999).

may, however, also be relevant in determining whether sufficient minimum contacts exist for the purpose of supporting specific jurisdiction, where such activities relate to the suit at hand.[27]

In other jurisdictions, a line of decisions has developed recognizing the technological revolution ushered in by the Internet and utilizing a sliding scale for determining whether a nonresident has submitted to a state's long arm jurisdiction by establishing the requisite minimum contacts through Internet-based activity. This sliding scale was initially articulated in *Zippo Mfg. Co. v. Zippo Dot Com.*[28] As recognized in that case,

> [a]t one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.[29]

In *Butler v. Beer Across America*,[30] a minor left alone at his Alabama home ordered 12 beers from corporate sellers in Illinois through the sellers' Internet website. Under the applicable provisions of the UCC, the beer was delivered to the carrier acting as the purchaser's agent in Illinois and then shipped by the carrier to the purchaser in Alabama. The purchaser's mother brought an action for damages against the sellers in federal district court in Alabama.

The court in *Butler* recognized that Alabama courts had found sufficient minimum contacts to support in personam jurisdiction over nonresident defendants in other actions related to out-of-state sale of goods to Alabama residents for use in Alabama, as in cases such as

---

[27] See *Butler v. Beer Across America*, 83 FSupp.2d 1261, 1266-1267 (N.D. Ala. 2000) and cits.

[28] 952 FSupp. 1119 (W.D. Pa. 1997).

[29] Id. at 1124 (citations omitted).

[30] Supra.

*Atlanta Auto Auction v. G & G Auto Sales.*[31] The *Butler* court concluded, however, that the contacts in those cases differed in both kind and extent from the de minimis connections in the *Butler* case.[32] Cases such as *Atlanta Auto Auction* involved sales of automobiles, with transactions presumably worth thousands of dollars each, as opposed to the less than $25 purchase in *Butler*. And applying *Zippo* principles, the *Butler* court found that Beer Across America's website did not anticipate the regular exchange of information across the Internet or provide for such interaction. The court concluded that, instead, it was more like an electronic bulletin board for the posting of information.

Similarly, in *Barton Southern Co. v. Manhole Barrier Systems*,[33] the federal district court in Georgia found that the nonresident defendant's Internet website failed to furnish a Georgia contact adequate to support personal jurisdiction where there was nothing on the website showing an intent to reach out to persons living in Georgia and no evidence that any Georgia residents had done business with the defendant either through the Internet or otherwise.[34]

In this case, unlike in *Barton Southern Co.*, the defendant operated an interactive website through which it has reached out to, and done business with, persons in Georgia. This case, like *Atlanta Auto Auction*, involves the sale of an automobile with the transaction worth thousands of dollars and involving shipment of an automobile to be operated in Georgia. Unlike the situation in *Butler*, the car was shipped into Georgia by the nonresident seller and not by a carrier acting as the resident buyer's agent (a factor found significant in *Butler* and other cited cases). Although Aero does not have officers, employees, offices, or business affiliates in Georgia, and although the revenue it derives from goods sold here may not be substantial in relation to its overall revenue, it does regularly solicit business in Georgia through the Internet, and the revenue it has derived from shipping cars to Grieves and other persons in Georgia is substantial enough to establish sufficient minimum contacts with the state of Georgia in a case involving the exercise of specific jurisdiction. Applying *Innovative Clinical*'s more expansive interpretation of the "transacting any business" provision of our Long Arm Statute than did the courts in cases such as *Coe & Payne* and *Flint v. Gust*, the state court did not err in determining that Aero has established sufficient

---

[31] 512 S2d 1334 (Ala. 1987).

[32] 83 FSupp.2d at 1266-1267.

[33] 318 FSupp.2d 1174 (N.D. Ga. 2004).

[34] See also *Bensusan Restaurant Corp. v. King*, 937 FSupp. 295 (S.D. N.Y. 1996); *Mink v. AAAA Dev. LLC*, 190 F3d 333 (5th Cir. 1999); *Roche v. Worldwide Media*, 90 FSupp.2d 714 (E.D. Va. 2000) (all involving Internet websites found to be passive).

minimum contacts with this state to warrant exercise of personal jurisdiction over it in this case.

2. Aero also contends that the state court erred in denying its motion to dismiss under the provision in the parties' agreement selecting Florida as the litigation forum. We cannot agree.

In Georgia, a defendant who files a motion to dismiss for lack of personal jurisdiction has the burden of proving lack of jurisdiction.[35] And any disputes of fact in the written submissions supporting and opposing the motion to dismiss are resolved in favor of the party asserting the existence of personal jurisdiction.[36] Applying these principles, the state court correctly resolved the factual conflict created by the opposing party's affidavits and supporting documentation in favor of Grieves so as to find, for purposes of the motion to dismiss, that he had not been provided with, nor agreed to, that part of the agreement containing the forum selection clause.[37]

*Judgment affirmed. Ruffin, C. J., and Smith, P. J., concur.*

DECIDED MAY 23, 2006.

*E. Alan Armstrong*, for appellant.
*Berger & Loewenthal, Gordon M. Berger*, for appellee.

---

[35] *Robertson*, supra, 267 Ga. App. at 757.

[36] *HTL Sp. Z O.O. v. Nissho Corp.*, 245 Ga. App. 625, 626 (538 SE2d 525) (2000).

[37] For similar reasons, Aero's reliance on the unpublished order of the United States District Court for the Northern District of Georgia in *Hill v. Commander Aircraft Co.* (Civil Action No. 2:04-CV-155-WCO, 2005) is misplaced. Compare *Carters Royal Dispos-All v. Caterpillar Financial Services*, 271 Ga. App. 159, 161 (2) (609 SE2d 116) (2004) (forum selection clause binding, front page of agreement referenced "additional terms and conditions" provision that contained forum selection clause on reverse side, *no evidence that seller misled purchaser as to terms of agreement*).