GIW INDUSTRIES, INC.,
Appellant–Plaintiff,

v.

PATRIOT MATERIALS, INC., and
Rick L. Hartman, Appellees–
Defendants.

No. 06A04–0909–CV–527.

Court of Appeals of Indiana.

April 15, 2010.

Derek F. Johnson, Indianapolis, IN, Attorney for Appellant.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Plaintiff, GIW Industries, Inc. (GIW), appeals the trial court's Order on Motion, setting aside a foreign judgment rendered in the State of Georgia against Appellees–Defendants, Patriot Materials, Inc. (Patriot) and Rick L. Hartman (Hartman) (collectively, Appellees), as void for lack of personal jurisdiction.

We reverse.

### ISSUE

GIW raises one issue on appeal, which we restate as: Whether the trial court improperly declared a valid and certified judgment from the State of Georgia void for lack of personal jurisdiction due to defective service of process.

### FACTS AND PROCEDURAL HISTORY

GIW is a Georgia corporation, located in Columbia County, Georgia, which specializes in the fabrication of machinery parts. On December 6, 2006, Hartman, the president of Patriot, an Indiana corporation located in Plainfield, Indiana, submitted a credit application to GIW through GIW's online website. After checking out all Hartman's references, including Hartman's bank, GIW found nothing averse and accepted the credit application. Thereafter, Hartman placed an order for technically specific parts with GIW. The finalized order was to be sent to Patriot.

The ordered parts were designed, manufactured, and shipped to Patriot for a total price of $20,957.72. After receipt of the equipment, Appellees defaulted on making payment. They failed to respond to GIW's telephone calls and letters requesting and demanding payment.

GIW filed a Complaint against Appellees in Columbia County, Georgia. On December 27, 2007, Hartman was personally served, both as an individual and as president of Patriot, at 615 Morningside Drive, Zionsville, Indiana. The private process server, employed by GIW, stated in his affidavit of service that Hartman was "very upset, told me to never come to his home again—[I] told him to stop running from me and hiding behind the ladies at his office." (Defendant's Exh. A). On March 13, 2008, the Georgia court, after conducting a hearing on the issue of damages, issued an order concluding that Appellees had committed fraud by false representations and awarded GIW $20,957.72 in damages, in addition to punitive damages in the sum of $25,000.00, litigation expenses of $2,346.00, and interest of $1,334.40 for a total judgment of $49,638.12. Appellees were not present at the hearing.

On October 15, 2008, GIW filed a certified copy of the Judgment from the Superior Court of Columbia County, State of Georgia, dated March 13, 2008, along with a Complaint on Foreign Judgment in Boone County, Indiana. On March 27, 2009, Appellees filed their Verified Motion to Stay Enforcement of Foreign Judgment and to Set Aside and Declare Void Foreign Judgment for Lack of Personal Jurisdiction and Insufficient/Non–Existant Service of Process. On April 15, 2009, GIW filed an objection to Appellees' motion. On May 29, 2009, the trial court entered its Order on Appellees' motion, requiring GIW to cease all collection efforts on the

judgment rendered by the Georgia court and ruled the Georgia judgment to be void for lack of personal jurisdiction and failure to properly serve notice. Accordingly, the trial court refused to give the Georgia judgment full faith and credit in the State of Indiana. On June 30, 2009, GIW filed its motion to correct error, which was subsequently denied by the trial court on July 21, 2009.

GIW now appeals. Additional facts will be provided as necessary.

### DISCUSSION AND DECISION

■ Initially, we note that Appellees did not file a brief. Where the Appellees fail to file a brief on appeal, we may in our discretion reverse the trial court's decision if the appellant makes a *prima facie* showing of reversible error. *McGill v. McGill,* 801 N.E.2d 1249, 1251 (Ind.Ct.App.2004). This rule was established for our protection so that we can be relieved of the burden of controverting the arguments advanced in favor of reversal where that burden properly rests with the Appellees. *Id.*

### I. *Standard of Review.*

■ This appeal comes before us after a denial of a motion to correct error. A trial court has discretion to grant or deny a motion to correct error and we reverse its decision only for an abuse of that discretion. *Hawkins v. Cannon,* 826 N.E.2d 658, 662 (Ind.Ct.App.2005), *trans. denied.* An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before the court or if the court has misinterpreted the law. *Id.*

### II. *Analysis*

GIW contends that the trial court abused its discretion when it denied full faith and credit to the judgment rendered by the Georgia court on the basis that the Georgia judgment was void for lack of personal jurisdiction and failure to properly serve notice.

■ The Full Faith and Credit Clause of the United States Constitution mandates that "[f]ull faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state." U.S. CONST. ART. IV, § 1. Full faith and credit means that "the judgment of a state court should have the same credit, validity, and effect, in every other court of the United States, which it had in the state where it was pronounced." *Gardner v. Pierce,* 838 N.E.2d 546, 550 (Ind.Ct.App.2005). Indiana has codified this notion at Indiana Code section 34–39–4–3, which provides that records and judicial proceedings from courts in other states "shall have full faith and credit given to them in any court in Indiana as by law or usage they have in the courts in which they originated." Full faith and credit commands deference to the judgments of foreign courts, and "the judgment of a sister state, regular and complete upon its face, is *prima facie* valid." *Id.*

■ A judgment of a foreign court is, however, open to collateral attack for want of personal jurisdiction or subject matter jurisdiction. *Commercial Coin Laundry Sys. v. Enneking,* 766 N.E.2d 433, 439 (Ind.Ct.App.2002). Thus, before an Indiana court is bound by a foreign judgment, it may inquire into the jurisdictional basis for that judgment; if the first court did not have jurisdiction over the subject matter or relevant parties, full faith and credit need not be given. *Lucas v. Estate of Stavos,* 609 N.E.2d 1114, 1120 (Ind.Ct.App.1993), *trans. denied.* A foreign judgment which is regular and complete on its face is presumed valid. *Id.* A party attacking the judgment of a sister

state has the burden of rebutting this presumption of validity and of showing that the sister state lacked jurisdiction. *Commercial Coin Laundry Sys.*, 766 N.E.2d at 439. In assessing a collateral attack on a foreign judgment, we apply the law of the state where the judgment was rendered. *Id.* A judgment which is void in the state where it was rendered is also void in Indiana. *Id.* Therefore, in order to avail, the Appellees were required to establish that the Georgia court lacked jurisdiction in rendering its verdict under Georgia law.

Turning to Georgia law, Georgia's Long Arm Statute, enacted in OCGA § 9–10–91, states that

A court of this state may exercise personal jurisdiction over any nonresident or his executor or administrator, as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he were a resident of the state, if in person or through an agent, he:

(1) Transacts any business within this state;

(2) Commits a tortious act or omission within this State, except as to a cause of action for defamation of character arising from the act;

(3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(4) Owns, uses, or possesses any real property situated within this state; or

(5) With respect to proceedings for alimony, child support, or division of property in connection with an action for divorce or with respect to an independent action for support of dependents, maintains a matrimonial domicile in this state at the time of the commencement of this action or, if the defendant resided in this state preceding the commencement of this action, whether cohabiting during that time or not. This paragraph shall not change the residency requirement for filing an action for divorce.

In considering whether a Georgia court may exercise jurisdiction over a nonresident based on the transaction of business, courts have traditionally applied a three-part test: jurisdiction exists on the basis of transacting business in Georgia if (1) the nonresident defendant has purposefully done some act or consummated some transaction in this state, (2) if the cause of action arises from or is connected with such act or transaction, and (3) if the exercise of jurisdiction by the courts of Georgia does not offend traditional fairness and substantial justice. *Robertson v. CRI*, 267 Ga.App. 757, 601 S.E.2d 163, 165–66 (2004).

In *First Nat'l. Bank of Ames, Iowa v. Innovative Clinical & Consulting Servs., LLC*, 280 Ga.App. 337, 634 S.E.2d 88 (2006), *reconsideration denied, cert. denied* 549 U.S. 1321, 127 S.Ct. 1910, 167 L.Ed.2d 565 (2007), the Georgia court of appeals held that personal jurisdiction can be imposed based on intangible contacts. First National Bank was based in Iowa. *See First Nat'l Bank of Ames, Iowa v. Innovative Clinical & Consulting Servs., LLC*, 266 Ga.App. 842, 598 S.E.2d 530, 532 (2004), *aff'd in part, denied in part*, 279 Ga. 672, 620 S.E.2d 352 (2005). Innovative, a Georgia resident, leased goods from a nonparty to the litigation. *Id.* The bank had a security interest in those goods. *Id.* When that nonparty failed to pay a debt it owed to the bank, the bank tried to collect the money from Innovative. *Id.* After unsuccessfully attempting to resolve the problem through mail and telephone con-

tact with the bank, Innovative sued. *Id.* The nonresident bank had no physical connections with Georgia; however, it did have telephonic and mail contacts with Innovative, a Georgia resident. *First Nat'l Bank of Ames, Iowa,* 634 S.E.2d at 88. The court found those contacts sufficient to confer jurisdiction. *Id.* "Even if the bank did not 'regularly' conduct business or engage in a 'persistent course of conduct' in Georgia, [under § 9–10–91], no doubt exists that the bank sought to derive economic benefit from its interstate business activity involving [the Georgia resident]. To that end, its postal, telephone, and other intangible Georgia contacts suffice to bring it within the purview of [§ 9–10–91]." *Id.* at 89. The court then made a separate and very brief constitutional analysis, holding that the bank had such minimum contacts with Georgia that exercising jurisdiction over it would not offend notions of fair play and substantial justice. *Id.* The court concluded that "[b]ecause the bank transacted some business in Georgia, even if only with this one customer, and because that business was sufficient to meet the constitutional standard for minimum contacts with this state," jurisdiction was proper. *Id.* at 90.

Similarly, in *Aero Toy Store, LLC v. Grieves,* 279 Ga.App. 515, 631 S.E.2d 734, 735 (2006), Grieves, a Georgia resident, conducted an extensive internet correspondence with Aero Toy Store, a car dealership in Florida, over a BMW that was up for auction on e-bay. Based on this correspondence, Grieves was the successful high bidder. *Id.* Thereafter, Aero Toy Store shipped the car to Grieves in Georgia. *Id.* at 736. The court found sufficient minimum contacts with Georgia to warrant exercise of personal jurisdiction under the Long Arm Statute. *Id.* at 741.

■ In light of these decisions, we find that personal jurisdiction was established over Appellees under Georgia's Long Arm Statute. The facts are undisputed that Hartman submitted a credit application to GIW through GIW's website. After checking Hartman's references, GIW accepted the application and thereafter, Hartman placed an order with GIW. In connection with this order, Hartman discussed by telephone the technical specifications with GIW's technician, who was located in Georgia. When the order was ready, GIW shipped the parts from Georgia to Indiana as directed by Hartman.

By filling out an application on GIW's website, and thereafter seeking telephonic contact with GIW to finalize and place the order, Hartman purposefully consummated a transaction in Georgia. Even if Appellees did not regularly conduct business in Georgia, no doubt exists that Appellees sought to derive some economic benefit from its interstate business activity with GIW. As a result, we conclude that intangible Georgia contacts suffice to bring Appellees within the purview of Georgia's Long Arm Statute.

■ With respect to service of process under Georgia law, we note that Georgia's Long Arm Statute allows service outside the state in the same manner as in Georgia for defendants who are subject to personal jurisdiction under the statute. *See* OCGA § 9–10–94. "When a defendant in a lawsuit challenges the sufficiency of service, he bears the burden of showing improper service. And this is a heavy burden." *Haamid v. First Franklin Fin. Corp.,* 299 Ga.App. 828, 683 S.E.2d 891, 893,(2009). Although the return of service is not conclusive, it constitutes evidence of a high order as to the facts it recites. *Id.* The return can only be set aside upon evidence which is not only clear and convincing, but the strongest of which the nature of the case will admit. *Id.*

In *Haamid,* the Georgia court of appeals found that Haamid had been personally served with the summons and complaint at his Portland, Oregon address. *Id.* Evaluating the sworn affidavit of the process server which stated that "I . . . certify that I served the [summons and complaint] upon [Haamid] on the 13 day of July, 2008, at Haamid's address in Portland, Oregon," the court found that Haamid had been duly and legally served. *Id.* at 829–30, 683 S.E.2d 891.

Here, the process server stated in his return of service that he had personally served a summons and complaint on Hartman on December 27, 2007, at Hartman's Indiana address. As such, we conclude that GIW made a *prima facie* showing of reversible error and thus, we find that the trial court abused its discretion when it refused to grant full faith and credit to the Georgia judgment and declared it to be void.

### CONCLUSION

Based on the foregoing, we find that the trial court improperly denied full faith and credit to a judgment from the State of Georgia.

Reversed.

MATHIAS, J., and BRADFORD, J., concur.