**November 3, 2025**

# In the Court of Appeals of Georgia

A25A0978. MEMORIAL HEALTHCARE GROUP, INC. v. VICKERS, AS ADMINISTRATOR OF THE ESTATE OF GERALDINE SMITH, DECEASED.

DOYLE, Presiding Judge.

Craig Vickers, as administrator of the estate of Geraldine Smith, filed suit against several entities and individuals including Memorial Healthcare Group, Inc., d/b/a HCA Florida Memorial Hospital ("Florida Memorial") for injuries Smith suffered while in Florida Memorial's care after a car accident. Florida Memorial moved to dismiss Smith's claims against it for lack of personal jurisdiction, which motion the trial court denied, certifying its decision for immediate review. We granted Florida Memorial's interlocutory application, and this appeal ensued. For the reasons

that follow, we vacate the order and remand for further proceedings consistent with this opinion.

"Our review of a decision on a motion to dismiss is de novo, and we construe the facts in favor of the party asserting personal jurisdiction." *Kolb v. Daruda*, 350 Ga. App. 642 (829 SE2d 881) (2019). "A motion to dismiss for lack of personal jurisdiction must be granted if there are insufficient facts to support a reasonable inference that the defendant can be subjected to the court's jurisdiction." *Hicks v. Universal Health Servs.,* 364 Ga. App. 769, 777 (2) (874 SE2d 877) (2022) (punctuation omitted).

> During a hearing on the determination of jurisdiction, in personam jurisdiction must be proven by a preponderance of the evidence. And a defendant moving to dismiss for lack of personal jurisdiction bears the burden of proving the absence of jurisdiction. Unlike a motion to dismiss for failure to state a claim which is adjudicated based on the allegations in pleadings, see. e.g., *Zephaniah v. Ga. Clinic P.C.*, 350 Ga. App. 408, 410 (829 SE2d 448) (2019) (noting that in reviewing a motion to dismiss for failure to state a claim, we construe the pleadings in the light most favorable to the plaintiff), a motion to dismiss for lack of personal jurisdiction must be adjudicated based on evidence placed before the court. In short, then, determination of personal jurisdiction requires a consideration of evidence.

*MAB Monroe, LLC v. Mayfield Self Storage, LLC*, 374 Ga. App. 98, 112 (911 SE2d 467) (2025) (citations, punctuation, and emphasis omitted) (citing *Intercontinental Svcs. of Del. v. Kent*, 343 Ga. App. 567, 568 (807 SE2d 485) (2017) (punctuation omitted); *Carter v. Heritage Corner, Ltd.*, 320 Ga. App. 828, 830 (2) (b) (741 SE2d 182) (2013)). See also *Crossing Park Props., LLC v. JDI Fort Lauderdale, LLC*, 316 Ga. App. 471 (729 SE2d 605) (2012)).

So viewed, the facts as alleged in the complaint and attached materials show that on March 8, 2024, Vickers sued several entities related to HCA Healthcare, Inc. ("HCA")[1]; Brandy Burke; and Florida Memorial. Vickers alleged that in March 2022, Smith was traveling on a Georgia highway in Coffee County, and Burke was driving behind her. Smith slowed to turn right, and Burke failed to stop, hitting Smith's vehicle and causing severe injuries, including paraplegia.

---

[1] These entities include HCA Heathcare, Inc., South Atlantic Division, Inc., HCA Healthcare, Inc. d/b/a South Atlantic Division, and SLS South Atlantic Division, LLC ("SLS"). These entities are residents of different states, except SLS, which is headquartered in Georgia. Except for SLS, these defendants have moved to dismiss for lack of personal jurisdiction; those motions remain pending and are not part of this appeal. Because the distinction does not matter for our purposes, "HCA" refers collectively to these entities except where indicated.

After the accident, Smith was taken to a regional hospital in Coffee County, but she was transferred to Memorial Health University Medical Center in Savannah, Georgia, "UMC Savannah," which is owned and operated by HCA. On April 6, Smith was transferred to Brooks Rehabilitation Hospital ("Brooks Rehabilitation") in Jacksonville, Florida. At the hearing below, Florida Memorial stated that UMC Savannah transferred Smith to Brooks Rehabilitation, which is not owned by HCA or Florida Memorial.

Because the car accident had rendered her immobile and incontinent, Smith was at risk for skin ulceration or bed sores. So upon arrival at Brooks Rehabilitation, a doctor assessed Smith, noting "no rashes or lesions" on her. The following day, Smith was admitted for gastritis treatment at the neighboring hospital, Florida Memorial.

Smith remained at Florida Memorial from April 8 to April 19, and Vickers alleged that hospital personnel negligently failed to turn or reposition Smith or keep her clean from soiling, which failures resulted in severe decubitus ulceration of the skin in the sacrum area of her lower back.[2] Rachel Spivey (a registered nurse, family

---

[2] The photographs of Smith's ulcerations reveal severe injury.

member of Smith's, and her healthcare power of attorney) visited her at Florida Memorial near the beginning and end of the April stay. Spivey oversaw Smith's care in person and via telephone conversations with hospital personnel. Spivey, who lives in Georgia, averred that she noticed Smith's wound on her second visit near the end of Smith's April stay, and Spivey described it as "a large non-stageable bedsore, necrotic tissue, along with redness and surrounding deep tissue injury." Based on Spivey's observations of the care provided, she opined that Florida Memorial failed to provide the appropriate standard of care to Smith in order to avoid the skin ulcerations.

On April 19, Florida Memorial discharged Smith back to Brooks Rehabilitation, and Vickers contends that this was negligent because Smith should have remained in a hospital setting. As the wounds worsened, it became necessary for Smith to receive a colostomy, and she was transferred back to Florida Memorial on May 16, where she had surgery and remained until May 25. Florida Memorial then transferred Smith back to Brooks Rehabilitation, and from there, she was transferred to Hospice of the Golden Isles in Brunswick, Georgia, where she died on June 22 after developing a sepsis infection from complications due to the decubitus ulcers.

The complaint also alleged personal jurisdiction over the out-of-state defendants including Florida Memorial under Georgia's long-arm statute. With respect to Florida Memorial, Vickers alleged that, as directed by HCA, it failed to properly staff or train its personnel, leading to the failure of care that resulted in Smith's ulcers and infection. Vickers also alleged that although Florida Memorial was a Florida corporation, it purposefully engaged in contact with Coffee County related to Smith's care through phone calls, billing, and correspondence, which subjected it to jurisdiction in Georgia.

Vickers supported these allegations with (1) Spivey's affidavit that showed she visited Smith at Florida Memorial twice during the April stay, investigating the care Smith was receiving, and between visits, corresponded via phone from Georgia about Smith's care with individuals at Florida Memorial; (2) the affidavit of Gary Stein, a former HCA executive, who averred that HCA directly operated Florida Memorial and all the other hospitals that it owned, including its hospitals in Georgia, and that it mailed several bills seeking payment for Medicare shortfalls to Smith's Georgia home for the time that she spent in Florida Memorial; and (3) a letter attached to the complaint sent by Florida Memorial to Spivey after she had complained about Smith's

6

skin ulcerations. In the letter, a risk manager dismissed Spivey's concerns as "unvalidated," but invited Spivey and her family to give Florida Memorial another opportunity to serve them if they had future healthcare needs.

On April 12, 2024, rather than answer, Florida Memorial filed a motion to dismiss the claims against it for lack of personal jurisdiction. Attached to its motion were Florida Memorial's articles of incorporation, registration for a fictitious name, and State of Florida hospital license. No affidavit or other evidence was attached to the motion to support these statements. Prior to the hearing on the motion, Vickers filed the deposition of Florida Memorial's Vice President of Quality, J. Melinda Isphording, who deposed that she verified the special appearance answer filed by Florida Memorial and confirmed that Florida Memorial is a Florida corporation, licensed in Florida, and does business only in Florida.

On May 28, Vickers moved for entry of default and a hearing on damages against Florida Memorial, arguing that its failure to file an answer (despite the fact that it had moved to dismiss) rendered it in default. Florida Memorial responded by moving to open default under OCGA § 9-11-55(b) and specially appearing to answer

the complaint. Both parties also filed supplemental briefs, and Vickers moved for jurisdictional discovery under OCGA § 9-11-12(j)(4).

The trial court heard argument on Florida Memorial's motion to dismiss for lack of personal jurisdiction and denied it in an order without making any specific findings of fact. Florida Memorial now appeals this decision, arguing that the trial court erred by denying its motion.[3]

1. "Personal jurisdiction is the power of a court to render a personal judgment, or to subject the parties in a particular case to the decisions and rulings made by it in such a case." *McCall v. Cooper Tire & Rubber*, 355 Ga. App. 273, 274 (843 SE2d 925) (2020) (punctuation omitted). While residents of Georgia are always subject to personal jurisdiction, "our courts may also exercise personal jurisdiction over nonresidents pursuant to Georgia's Long Arm Statute." Id. (citing OCGA § 9-10-91).

Under OCGA § 9-10-91,

[a] court of this state may exercise personal jurisdiction over any nonresident . . . , as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code

---

[3] Pending below are Florida Memorial's motion to open default, Vickers's motion for default judgment and for a damages hearing, HCA's motion to dismiss for lack of personal jurisdiction, and Vickers's motion for jurisdictional discovery.

section, in the same manner as if he or she were a resident of this state, if in person or through an agent, he or she: (1) Transacts any business within this state; (2) Commits a tortious act or omission within this state . . . ; [or] (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state; . . . .

Subsection (1), "grants Georgia courts the unlimited authority to exercise personal jurisdiction over any nonresident who transacts any business in this State . . . to the maximum extent permitted by procedural due process." *Sullivan v. Bunnell*, 340 Ga. App. 283, 285 (1) (797 SE2d 499) (2017) (quoting *Innovative Clinical & Consulting Servs., LLC v. First National Bank of Ames*, 279 Ga. 672, 675 (620 SE2d 352) (2005) (punctuation omitted) (overruling "all prior cases that fail to accord the appropriate breadth to the construction of the 'transacting business' language of OCGA § 9-11-91(1)")). Thus,

nothing in subsection (1) [of OCGA § 9-10-91] requires the physical presence of the nonresident in Georgia or minimizes the import of a nonresident's intangible contacts with the State. . . . Georgia 'allows the assertion of long-arm jurisdiction over nonresident defendants based on business conducted through postal, telephonic, and Internet contacts.

*Crossing Park Props.*, 316 Ga. App. at 475-476.

Nevertheless, because the application of the plain language of subsection (1) "would expand the personal jurisdiction of Georgia courts beyond that permitted by constitutional due process," the Court must "construe subsection (1) as reaching only 'to the maximum extent permitted by procedural due process.'" *Innovative Clinical & Consulting*, 279 Ga. at 675. To determine that maximum extent, the Georgia Supreme Court has explained that

> [j]urisdiction exists on the basis of transacting business in this state if (1) the nonresident defendant has purposefully done some act or consummated some transaction in this state, (2) if the cause of action arises from or is connected with such act or transaction, and (3) if the exercise of jurisdiction by the courts of this state does not offend traditional fairness and substantial justice.

*Amerireach, LLC v. Walker*, 290 Ga. 261, 269 (2) (719 SE2d 489) (2011) (punctuation omitted) (quoting *Aero Toy Store v. Grieves*, 279 Ga. App. 515, 517-18 (1) (631 SE2d 734) (2006)). And "[w]hile OCGA § 9-10-91(1) requires only that the nonresident transact any business in Georgia, subsection (3) requires 'regular,' 'persistent' or 'substantial' contact with this State in order for Georgia courts to exercise personal

10

jurisdiction over nonresident tortfeasors." *Innovative Clinical & Consulting*, 279 Ga. at 675 n.4.

2. As an initial matter, the trial court's order clearly addressed Florida Memorial's motion to dismiss for lack of jurisdiction. It is unclear whether it also addressed its motion to open default or Vicker's motion for entry of default judgment.[4]

Under OCGA § 9-11-55(a) a case is automatically in default if not answered within the prescribed time, and it is undisputed that Florida Memorial did not answer within 30 days of service. They did, however, file within 30 days a motion to dismiss raising the defense of personal jurisdiction.[5] "After the 15-day grace period for opening default as a matter of right under OCGA § 9-11-55(a), a trial court has no discretion to open default" unless the defendant complies with the conditions of

---

[4] The transcript of the hearing shows that there was extensive argument from both parties on the import of the default on personal jurisdiction with Vickers urging the court to adopt its position that having defaulted, Florida Memorial admitted all of the well-plead allegations in the complaint, including those admitting personal jurisdiction over it.

[5] Although inapplicable to this appeal, OCGA § 9-11-12(a) (2025) was amended effective as of April 21, 2025, to include a tolling provision for filing an answer in the event a defendant files, inter alia, a motion to dismiss for lack of personal jurisdiction. See Ga. L. 2025, p. 19, § 2/SB 68.

OCGA § 9-11-55(b). *Samadi v. Fed. Home Loan Mtg. Corp.*, 344 Ga. App. 111, 115 (1) (809 SE2d 69) (2017) (citations and punctuation omitted). Although Florida Memorial missed the 15-day grace period for moving to open default, it complied with the requirements of OCGA § 9-11-55(b) prior to entry of a default judgment. By filing a motion to dismiss for lack of personal jurisdiction within 30 days of service, Florida Memorial preserved that defense. See *Morgan v. Berry*, 152 Ga. App. 623, 623-624 (263 SE2d 508) (1979) (because the defendant timely asserted a defense to lack of venue by filing a motion prior to default, the trial court erred by denying his timely motion to set aside the judgment); OCGA § 9-11-12(h)(1)(B) (the defense of lack of personal jurisdiction is waived if it is not raised in the defendant's responsive pleading or a motion made before or at the time of the pleading). See also *Ward v. Marriot Int'l*, 352 Ga. App. 488, 491 (2) (835 SE2d 322) (2019) (explaining that "a properly served defendant who wishes to rely on an affirmative defense, such as lack of personal jurisdiction or venue, must assert the defense in a timely filed answer or in a motion to dismiss prior to default"); *O'Steen v. Boone*, 117 Ga. App. 174, 175 (1) (160 SE2d 229) (1968) ("Lack of jurisdiction over the person can be raised by a motion to dismiss").

Pretermitting whether the trial court should have first addressed the motion to open default or implicitly did so in its order denying the motion to dismiss, we now vacate that order.

> [W]hile a default operates as an admission of the well-pled factual allegations in a complaint, it does not admit the legal conclusions contained therein. A default simply does not require blind acceptance of a plaintiff's erroneous conclusions of law. Nor does a default preclude a defendant from showing that under the facts as deemed admitted, no claim existed which would allow the plaintiff to recover.

*Fink v. Dodd*, 286 Ga. App. 363, 365 (1) (649 SE2d 359) (2007) (punctuation omitted).

Assuming without finding that Florida Memorial was in default, the allegations of the complaint (and the supporting evidence in the record) do not establish personal jurisdiction over it. First, the complaint states that Florida Memorial is registered to do business in Florida. Second, the allegations of the complaint fail to show that the trial court had personal jurisdiction over it under OCGA § 9-10-91. The phone calls between Florida Memorial and Spivey (or other relatives), the attempt by HCA to bill Smith for any uncovered medical expenses, and the letter sent from Florida Memorial to Spivey about her medical complaint do not establish purposeful acts resulting in the

13

professional negligence cause of action at issue in this case.[6] Those acts simply did not facilitate Smith coming into care at the hospital, nor did they instigate a relationship between Smith and Florida Memorial. Thus, even under the broad sweep of OCGA § 9-10-91 (1), the fact that Florida Memorial reached out to Smith's family about her care via phone and a letter, or another HCA entity mailed bills to her home is insufficient to find jurisdiction exists over Florida Memorial under OCGA § 9-10-91(1) for claims related to its negligent care of Smith that occurred in Florida.[7]

---

[6] Vickers alleged only a single count of professional negligence against Florida Memorial claiming it breached the standard of care by under-staffing the floor where Smith was being treated, failing to properly turn her in a timely manner, using a specialty bed, or employing skin protective measures.

[7] See, e.g., *Cascade Aircraft Mgmt., LLC v. Velazco*, 374 Ga. App. 397, 404 (913 SE2d 4) (2025) (cert. denied (Case No. S25C0871, July 1, 2025) (reversing trial court's denial of motion to dismiss for lack of personal jurisdiction because the non-resident entity provided site-specific services, and the decedent instigated contact between herself and the entity)). Compare *Crossing Park Props.*, 316 Ga. App. at 477 (reversing dismissal order based on lack of jurisdiction and holding that the nonresident defendant's "conduct in negotiating with a Georgia broker [who was not the plaintiff] and sending documents to a Georgia resident for execution in Georgia provided fair warning that it might be subject to suit in Georgia"); *First National Bank of Ames, Iowa v. Innovative Clinical & Consulting, LLC*, 280 Ga. App. 337, 338 (634 SE2d 88) (2006) (on remand from the Georgia Supreme Court's decision in *Innovative Clinical & Consulting*, 279 Ga. at 672, and holding that even though the non-resident bank's only contacts with Georgia were the exchanged letters and telephone calls with the plaintiff regarding accounts that were opened by another party at the bank; the plaintiff did not instigate the relationship; and "the bank transacted some

Further, because the tort against Smith occurred in Florida, OCGA § 9-10-91(2) ("[c]ommits a tortious act or omission within this state") does not apply. And with regard to OCGA § 9-10-91(3), the phone calls, letter, and bills do not constitute the "'regular,' 'persistent' or 'substantial'" acts necessary to establish jurisdiction under this subsection. *Innovative Clinical & Consulting*, 279 Ga. at 675 n.4. Finally, there is no contention that Florida Memorial intentionally targeted Georgia with any advertising, and the remainder of the allegations of the complaint are attributable to one or more of the HCA entities that remain as parties in the pending litigation.[8]

business in Georgia, even if only with this one customer," which "was sufficient to meet the constitutional standard for minimum contacts"); *Aero Toy Store*, 279 Ga. App. at 523-524 (1) ("Although Aero does not have officers, employees, offices, or business affiliates in Georgia, and although the revenue it derives from goods sold here may not be substantial in relation to its overall revenue, it does regularly solicit business in Georgia through the Internet, and the revenue it has derived from shipping cars to [the plaintiff] and other persons in Georgia is substantial enough to establish sufficient minimum contacts with the state of Georgia in a case involving the exercise of specific jurisdiction").

[8] Documents attached to the complaint purport to show that as of December 2022, HCA "operated" 182 hospitals, including rehabilitation centers, 126 surgery centers, and 21 endoscopy centers in 20 states, that the focus of HCA's business was their patients, and that they generated revenue in the form of tax payments to their communities. Vickers alleged that HCA operated and controlled decision making and staffing at Florida Memorial, advertised in Coffee County, Georgia, where Smith

15

Accordingly, because the allegations of the complaint as admitted do not support a finding of default against Florida Memorial on the issue of personal jurisdiction — and absent default the record also does not support a finding of personal jurisdiction — we vacate the trial court order denying the motion to dismiss for personal jurisdiction and remand for entry of orders granting Florida Memorial's motion to open default and motion to dismiss.

*Judgment vacated and case remanded with direction. Markle and Padgett, JJ., concur.*

---

lived, derived substantial revenue from operations in Georgia, and regularly transacted business there. The deposition of Adam Landau, the Vice President of Marketing and Public Relations for one of the HCA entities, deposed that each hospital had its own chief operating officer and operating team, and the group includes 12 hospitals in South Carolina, Georgia, and Florida, including Florida Memorial. He explained that the service area for advertisements taken out by the group for Florida Memorial was Florida, but he added, "I do feel like I should say the Jacksonville market may bleed into Georgia." He admitted that the group marketed certain surgeries at its 12 hospital sites in combination ads. SLS South Atlantic Division, LLC, was headquartered in Georgia, and therefore, a resident of the state; Vickers alleged it assisted in management and operations of all HCA hospitals in Georgia, Florida, and South Carolina, including Florida Memorial.