**PERRIGO COMPANY, Sergeant's Pet Care Products, Inc., d/b/a Perrigo Animal Health; Velcera, Inc.; and Fidopharm, Inc., Plaintiffs,**

v.

**MERIAL LIMITED d/b/a Merial, LLC, Defendant.**

Merial, Inc. and Merial Sas, Plaintiffs

v.

Perrigo Company, Sergeant's Pet Care Products, Inc. d/b/a Perrigo Animal Health; Velcera, Inc., and Fidopharm, Inc., Defendants.

**CIVIL ACTION FILE NO. 1:15-CV-3674-SCJ, CIVIL ACTION FILE NO. 1:15-CV-0013-SCJ**

United States District Court, N.D. Georgia, Atlanta Division.

Signed October 06, 2016

Kamron T.M. Hasan, Michael S. Degan, Husch, Blackwell Law Firm, Kelly N. Pleas, Perrigo Animal Health, Omaha, NE, Mark Edward McGrath, Paul Garrity, Rena Andoh, Robert S. Friedman, Tyler E. Baker, Sheppard Mullin Richter & Hampton, New York, NY, Cody Sams Wigington, Joseph Matthew Englert, Michael Scott French, Wargo & French LLP, Atlanta, GA, for Plaintiffs.

Carrie S. Dolton, Michael T. Hilgers, Gober, Hilgers Law Firm, Omaha, NE, Frank Garrett Smith, III, Matthew Wolff Howell, Alston & Bird, LLP, Atlanta, GA, John Patrick Elsevier, Jones Day, San Diego, CA, Judy Catherine Jarecki-Black, Merial Limited, Duluth, GA, Edward D. Tolley, Cook, Noell, Tolley & Bates, Athens, GA, for Defendant.

## ORDER

HONORABLE STEVE C. JONES
UNITED STATES DISTRICT JUDGE

In this two-case consolidated contract dispute between competing pet flea medicine manufacturers, defendants in Civil Action No. 1:15–cv–013 (plaintiffs in Civil Action No. L15–cv–3674)[1] move to dismiss that case for lack of personal jurisdiction. Doc. 164. Plaintiffs oppose. Before addressing the merits of the present dispute,

---

1. For purposes of this Order, "Defendants" or "Perrigo" refers to defendants in Civil Action No. 1:15–cv–013; "complaint" refers to that case's initial pleading (doc. 161); and "Plaintiffs" or "Merial" refers to that case's plaintiffs. All citations are to the consolidated docket in 1:15-cv-3674 unless otherwise noted, and all page numbers are those imprinted by the Court's docketing software. Civil Action No. 1:15–cv–013 is abbreviated "Case 13," and Civil Action No. 1:15-cv-3674 is "Case 3674."

the Court first disposes of several related procedural motions.

## I. PRELIMINARY MATTERS

### A. The Seal Motions

Both sides move to seal their respective filings and associated attachments related to Defendants' underlying motion to dismiss.[2] See docs. 166; 168; 172. Neither side opposes the other's requests, and both sides have filed redacted, public versions of the documents they wish sealed. See, e.g., doc. 170.

Noting that the Court sealed the Complaint in Case 13 and several exhibits "in their entirety" because they refer to "highly confidential, commercially sensitive information,"[3] Defendants seek equal treatment for their opening brief (doc. 165-1) and two declarations in support (docs. 165-2, 165-3). Doc. 166. Those filings, they contend, relate to the same information that justified sealing the Complaint. Id. at 3. Over no opposition (per Local Rule 7.1 (B), no response equals no opposition) and because the motion is otherwise well-supported, the Court **GRANTS** Defendants' motion. Doc. 166. Docket entries 165-1; 165-2; and 165-3 shall remain sealed.

Plaintiffs likewise want portions of their response and two exhibits sealed. Defendants do not oppose. The motion is well-supported, so it is **GRANTED.** Doc. 169.

Docket entries 168; 168-1; and 168-2 shall remain sealed.[4] All the same can be said for Defendants' motion to seal their reply. Consequently, the Court **GRANTS** that motion, too. Doc. 172. Doc. 171 shall remain sealed.

### B. Defendants' Surreply Request

Despite recognizing "that the Court does not favor surreplies," Plaintiffs "request[ ] the opportunity to address" arguments allegedly "raised for the first time in [Defendants'] reply brief." Doc. 173 at 3. Specifically, they want to respond to Defendants' arguments that:

(i) because [they] initially moved for a transfer of venue under 28 U.S.C. § 1404(a), [Defendants'] did not waive personal jurisdiction, even though other courts have held that a § 1404(a) transfer motion is the equivalent of a Rule 12 motion for purposes of waiver and (ii) subsection (1) of the Georgia Long Arm Statute, [O.C.G.A.] § 9–10–91, allegedly requires continuous and systematic transaction of business, even though that statute requires only transaction of 'any' business.

Doc. 173 at 3 (record citations omitted).

Opposing, Defendants emphasize that this Court strongly disfavors surreplies. See doc. 174 at 5-6. They also insist that

---

**2.** Both sides also adhered to Appendix H to the Local Rules, Standing Order No. 04–01, and this Court's Case Instructions in filing their respective seal motions.

**3.** Although the Court ordered the Complaint and several exhibits sealed (Merial Inc. v. Perrigo Co. et al., No. 1:15–cv–013, doc. 2 (N.D. Ga. Jan. 2, 2015)), an administrative error related to consolidation has resulted in the Complaint remaining publically available. See, e.g., doc. 161. The Clerk therefore is **DIRECTED** to seal doc. 161 in Civil Action No. 1:15-cv-3674, as well as doc. 3 in Civil Action No. 1:15–cv–013.

**4.** Curiously, Plaintiffs' response brief's "glossary of terms" contains unredacted references to contracts between the parties that receive sealing treatment throughout the briefing on the present motion. See, e.g., doc. 167 at 4 ("Redacted–Public Version" of response brief containing definitions of the "Master Settlement Agreement" and "Sergeant's Agreement" that both parties consistently redact). If Plaintiffs wish to redact the glossary, they must file a new motion.

none of their reply brief arguments are "new." Id. at 4. Instead, Defendants say, the "arguments simply respond to arguments raised in [Plaintiffs'] response brief." Doc. 174 at 7 (quoting Chemence Med. Prods., Inc. v. Medline Indus., Inc., 119 F.Supp.3d 1376, 1383 (N.D. Ga. 2015)).

It's true that neither the Federal Rules nor this Court's Local Rules contemplate surreplies. Fedrick v. Mercedes Benz USA, LLC, 366 F.Supp.2d 1190, 1197 (N.D. Ga. 2005). "To allow ... [them] as a regular practice would put the court in the position of refereeing an endless volley of briefs." Garrison v. N.E. Ga. Med. Or., Inc., 66 F.Supp.2d 1336, 1340 (N.D. Ga. 1999). That said, "where a valid reason for such additional briefing exists, such as where the movant raises new arguments in its reply," this Court permits that extra volley. Playnation Play Sys., Inc. v. Velex Corp., No. 1:14–CV–01046–RWS, 2016 WL4166250, at *1 (N.D. Ga. Apr. 27, 2016).

At best, Defendants' reply brief arguments qualify as responses to Plaintiffs' own oppositional contentions. For example, Plaintiffs' response insists that defendants "waived the ability to challenge personal jurisdiction by previously filing a Rule 12 motion in this case without raising lack of personal jurisdiction as a defense." Doc. 168 at 17. In reply, Defendants point out that their motion to transfer or stay (the aforementioned Rule 12 motion) never cited Rule 12 (they claim it fell under 28 U.S.C. § 1404, the venue statute) and thus they never waived their current jurisdictional challenge. Doc. 171 at 7-9. That's not a "new" argument; rather, it is responds, albeit in slightly different terms, to an argument Plaintiffs raised in their response. Fedrick, 366 F.Supp.2d at 1197. The same is true for Defendants' "systematic and continuous argument," to which Plaintiffs wish to surreply. Hence, the Court **DENIES** Plaintiffs' motion for leave to file such a brief. Doc. 173.

## II. BACKGROUND [5]

Some years ago, Defendant Merial Limited (Merial) created a topical pet flea medicine—"Frontline Plus"—using a combination of two pesticides. Doc. 161 at 4-6. "Frontline Plus products are covered by U.S. Patent No. 6,096,329 [ (329 Patent) ]." Id. at 5. In 2010, Sergeant's Pet Care Products, Inc. (Sergeant's) filed a patent

---

**5.** In the context of a motion to dismiss for lack of personal jurisdiction, the Court construes a complaint's allegations as true "to the extent they are uncontroverted by defendant's affidavits or deposition testimony." See Potts v. Dyncorp Int'l. LLC 465 F.Supp.2d 1254, 1256 (M.D. Ala. 2006) (citing Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988)). The facts presented in this section hew to that standard.

That said:
[a] plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction. United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009). Where, as here, the defendant challenges jurisdiction by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction. Id. (quoting Meier ex rel. Meier v. Sun Int'l Hotels. Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002)); see also Polskie Linie Oceaniczne v. Seasafe Transport A/S, 795 F.2d 968, 972 (11th Cir. 1986) (noting that, if the defendant makes a showing of the inapplicability of the long-arm statute, "the plaintiff is required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint"). Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff. Meier, 288 F.3d at 1269.
Diamond Crystal Brands, Inc. v. Food Movers Int'l. Inc., 593 F.3d 1249, 1257 (11th Cir. 2010) (quotation marks omitted).

reexamination request challenging the 329 Patent's validity. Id. at 7. Sergeant's lost in June 2011. Id. at 8.

In "early 2011," after seeking reexamination but before that proceeding ended, Sergeant's began selling "a generic version of Frontline Plus" named FiproGard Plus. Doc. 161 at 7. Sergeant's and Merial thereafter entered into an agreement (the "Sergeant's Agreement") that required Sergeant's to, among other things, cease selling any 329 Patent-infringing product if the reexamination resolved in Merial's favor. Id. at 7–8. In return, Merial agreed not to sue Sergeant's for infringement. Id. at 7. When Sergeant's lost on reexamination, the parties amended the Sergeant's Agreement to affirm that Sergeant's would not make or sell infringing products. Id. at 8–9.

Approximately one year later (October 2012), defendant Perrigo acquired Sergeant's. Id. at 17. Now, Sergeant's does business as a Perrigo subsidiary, "Perrigo Animal Health." Id. Six months after that (April 2013), Perrigo also acquired Velcera (id at 22), who itself had been involved in 329 Patent-related litigation with Merial that settled via an agreement (the "Velcera Agreement")[6] obligating Velcera to cease product sales in exchange for Merial agreeing not to sue. Id. at 10–15.

That same year, Merial became involved in 329 Patent litigation with third-party Ceva Animal Health, LLC. Doc. 161 at 17. Settlement discussions ultimately ended in an agreement whereby Merial granted Ceva a license under the 329 Patent to sell a Frontline Plus-style product. Id. at 23. Per the Velcera Agreement, Merial notified Velcera that Ceva now possessed the rights to sell 329 Patent-related products. Id. at 24.

The Ceva license precipitated Perrigo, Sergeant's, and Velcera's suit against Merial in the District of Nebraska for breach of the Velcera Agreement. Doc. 161 at 25–26; doc. 1 (Case 3674's complaint, filed December 12, 2014). Less than a month later, Merial filed Case 13 against Defendants in this Court contending that they violated the Sergeant's Agreement by "making, selling, offering for sale, or importing into the United States" a 329 Patent-infringing product. Doc. 161 at 28. Merial also moved to dismiss or transfer the Nebraska action—the Nebraska court chose transfer. This Court later consolidated Case 13 and Case 3764. Doc. 160.

Defendants move to dismiss Case 13, insisting that the Court lacks personal jurisdiction. Doc. 165. According to Defendants, they never transacted business in Georgia, do not possess the "continuous and systematic . . . affiliations with [Georgia]" necessary to "render [them] essentially at home" here (doc. 165-1 at 18), and never initiated in-state contacts that gave rise to the allegedly offensive conduct at issue in Case 13. Id. at 21. Without those connections, the Court, say Defendants, may not assert its authority. Id. at 8.

Plaintiffs believe Defendants waived any personal jurisdiction challenge "by previously filing a Rule 12 motion in this case without raising lack of personal jurisdiction as a defense" (doc. 168 at 17), and via conduct that implicitly acquiesced to the Court's authority. Id. at 19. Waiver aside, Plaintiffs contend that Defendants transacted business and committed tortious acts in Georgia, either or both of which relate to the conduct underlying plaintiffs' claims in Case 13. Id. at 20–27. Doing so, they

---

**6.** Plaintiffs refer to this document as the "Master Settlement Agreement." See, e.g., doc. 168 at 4.

say, exposes Defendants to this Court's authority. Id.

## III. ANALYSIS

### A. Waiver

█ " '[A]ny time a defendant makes a pre-answer' motion under Federal Rule of Civil Procedure 12, he or she must include, on penalty of waiver, the defenses set forth in subdivisions (2) through (5) of Rule 12(b). If one or more of these defenses[, which include lack of personal jurisdiction,] are omitted from the initial motion but were 'then available' to the movant, they are permanently lost." 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1391 (3d ed. updated 2016)[7] In that vein, "[i]t is well-settled that lack of personal jurisdiction is a waivable defect, and that a defendant waives any objection to the district court's jurisdiction over his person by not objecting to it in a responsive pleading or a Fed. R. Civ. P. 12 motion." Palmer v. Braun, 376 F.3d 1254, 1259 (11th Cir. 2004).

Defendants previously filed a "motion to transfer ... or, alternatively, to stay this action." Case 13, doc. 17 at 1 (N.D. Ga. Jan. 26, 2015). Their brief-in-support argues for a venue change under the prudential "first filed" rule[8] (id. at 33-38) and 28 U.S.C. § 1404. See id. at 39-46. The motion

itself, however, nominally was filed "pursuant to Fed. R. Civ. P. 12(b)." Id. at 1; see Fed. R. Civ. P. 12(b)(3) (defense of "improper venue" may be raised by motion before filing a responsive pleading). If defendants' transfer request qualifies as a Rule 12(b)(3) motion, they waived any personal jurisdiction defense by not asserting it in that motion. See Fed. R. Civ. P. 12(g)(2) & 12(h); Braun, 376 F.3d at 1259.

Substance, not labels, matter. See Citimortgage, Inc. v. Dhinoja, 705 F.Supp.2d 1378, 1381 (N.D. Ga. 2010). And in substance, Defendants' first motion in this case (the motion to transfer or stay) argued for a change of venue, *not* that venue is improper in this Court. There is a difference, and Rule 12 and associated waiver principles only cover improper venue, not changes. See Fed. R. Civ. P. 12(b)(3) (allowing parties to assert the defense of "improper venue" by motion).

Under § 1404(a), a court "may transfer venue" for "convenience," or "the interest of justice" when it otherwise properly lies in the filing court. By contrast, § 1406 mandates dismissal or transfer of cases "laying venue in the wrong division or district." Rule 12(b)(3)'s "improper venue" defense-and its dismissal remedy-captures § 1406, not the venue changes § 1404 permits.[9] See Sun Trust Bank v. Sun Int'l

---

7. Rule 12(g)(2) requires that parties moving to dismiss under 12(b) consolidate all grounds for dismissal in one motion-piecemeal motions to dismiss are not allowed. Rule 12(h)(2)(A), meanwhile, states that "[a] party waives any defense listed in 12(b)(2)-(5) by omitting it from a motion in the circumstances described in Rule 12(g)(2)." Together, (g)(2) and (h)(2) require parties to, if they choose to move to dismiss (as opposed to merely asserting a defense in their responsive pleading), raise all 12(b) defenses in one pre-answer motion rather than parcel them out in individual filings.

8. See Manuel v. Convergys Corp., 430 F.3d 1132, 1135 (11th Cir. 2005) ("Where two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule.").

9. Notably, Rule 12(b)(3) motions almost always include discussion of 28 U.S.C. § 1391(b), which delineates where venue may lie in a given action. Defendants' transfer motion (Case 13, doc. 17), by contrast, only cites that provision to show that Nebraska could serve as a valid venue for Case 13 should the Court find transfer an appropriate

Hotels, Ltd., 184 F.Supp.2d 1246, 1256 (S.D. Fla. 2001) (distinguishing between § 1404(a) and Rule 12(b)(3) as "procedural vehicle[s] for relief"); Eagle N. Am., Inc. v. Tronox, LLC, 2008 WL 1891475, at *1 (S.D. Ga. April 29, 2008) (same); but see Silver v. Countrywide Realty, Inc., 39 F.R.D. 596, 599 (S.D.N.Y. 1966) ("[D]efendants by moving to dismiss on the ground of forum non conveniens waived their right to challenge (in personam) jurisdiction of the court. . . ."). Certainly motions for change of venue and to dismiss for improper venue often will involves similar considerations. But both rule and statute differentiate and so will this Court.

■ As discussed above, Defendants moved for a *change* of venue and never argued the impropriety of venue in this Court. Instead, they contended that venue more properly lay in the District of Nebraska because they, as plaintiffs, filed suit there before the Merial plaintiffs sued them here. See Case 13, doc. 17 at 34. In the alternative, they asked for a stay to allow the Nebraska court to decide whether to transfer that action to this Court. Neither form of relief that Defendants sought—transfer to Nebraska, or a stay—

involved dismissal, which a winning Rule 12(b)(3) (indeed, any 12(b) motion) motion would have generated.

In other words, Defendants never asserted an "improper venue" defense under Rule 12(b)(3). That makes their present Rule 12(b)(2) motion the first foray into Rule 12. And that means no waiver applies as a result of their earlier transfer motion.[10] See Fed. R. Civ. P. § 12(h)(1) (parties waive personal jurisdiction defenses by failing to assert them in first 12(b) motions); Palmer, 376 F.3d at 1259.

Other litigation conduct, however, may, like a failure to timely move under Rule 12, result in waiver. See Ferraro Foods, Inc. v. M/V Izzet Incekara, No. 01–CIV–2682, 2001 WL 940562, at *3 (S.D.N.Y. Aug. 20, 2001) ("[T]he federal Rules are not inclusive of the circumstances in which a defense will be deemed waived. Rule 12(h) simply defines the outer and absolute limits of timeliness. It does not preclude waiver by implication."). So, for example, joining another party's § 1404 motion can preclude a later venue challenge. See Altman v. Liberty Equities Corp., 322 F.Supp. 377, 379 (S.D.N.Y. 1971).[11]

---

10. Not only that, but the basis for Defendants' transfer request (the "first-filed" rule) requires deference "to the court where the first action was filed to allow that court to decide whether it should exercise jurisdiction over both cases in a consolidated action." Tiber Labs., LLC v. Cypress Pharm., Inc., No. 2:07–cv–014–RWS, 2007 WL 3216625, at *2 (N.D. Ga. May 11, 2007). When parties file joint venue change and personal jurisdiction-based motions, then, granting the former results in deferring the latter to the transferee court. See id. (granting a motion to change venue and concluding that the other court "is also better suited to determine the bounds of its

solution (it ultimately did not). It is not utilized to show that Georgia is an improper venue as it presumably would if Defendants' transfer motion in substance fell under Rule 12(b)(3).

own personal jurisdiction"). That deference makes little sense if parties *must*, as Plaintiffs' waiver theory implies, assert jurisdictional defenses in the same court they ask to relinquish control over a matter.

11. Altman notably says nothing about whether joining a § 1404 venue challenge has any effect on a party's ability to later assert a lack of personal jurisdiction defense. See 322 F.Supp. at 379 ("[I]t is unnecessary to determine whether a section 1404(a) motion for change of venue based upon *forum non conveniens* principles falls within the letter or spirit of Rule 12(b) so as to be governed by Rules 12(g) and (h) pursuant to which the failure to consolidate section 12(b) motions constitutes waiver."). It was "rather the logical inseparability of a section 1404 motion for change of venue and a Rule 12(b) dismissal motion for improper venue that mandates that they be

Plaintiffs contend that Defendants waived their jurisdictional objections by (1) admitting that this Court possesses jurisdiction, and (2) not contesting this Court's jurisdiction in other cases, including Case 3674 that it originally brought in Nebraska. Doc. 168 at 19-20. Both arguments stretch too far.

█ Plaintiffs would have the Court infer an admission of jurisdiction from Defendants' general, and uncontroversial, statement that they would "have to litigate" the same issues in two separate jurisdictions if Case 13 and Case 3674 remained in different districts. Case 13, doc. 20 at 7. "Litigate" is a broad term and can encompass anything from "appear specially only to contest jurisdiction," to "conduct full-blown discovery and move for summary judgment." Nothing about Defendants' use of that term indicates which pole they inclined towards. Litigating the "same issues" in different forums arguably refers to something more than jurisdiction but, absent more, the Court declines to infer waiver from its usage.

Nor did Defendants admit to jurisdiction in the parties' Joint Discovery Plan in Case 3674. Doc. 153. In fact, Defendants implicitly revealed their jurisdictional doubts by stating that "[i]f Case 13 remains in this Court and is not *dismissed for lack of jurisdiction* ... [Perrigo] ... will consider whether to consent to consolidation." Id. at 9–10 (emphasis added). They did state that no jurisdictional questions existed (id. at 13), but again, the parties filed the discovery plan in Case 3674, which Perrigo originally initiated in a different district. That the Nebraska court ultimately transferred the case (over Perrigo's strenuous opposition) cannot now undergird a finding that Perrigo admits to this Court's jurisdiction.

Holding otherwise (i.e., holding that plaintiffs in one case cannot, as defendants in another action, raise a personal jurisdiction defense because their status as plaintiffs constitutes a jurisdictional admission in all cases in a particular district) creates undesirable results. An examples illustrates why: Company A sues Company B in Green State ("Case 1"). Company B shortly thereafter sues Company A in Blue State ("Case 2"). Despite the first filed rule, Company B succeeds in having Case 1 transferred to Blue State. Under Plaintiffs' proposed rule, Company A would have to abandon Case 1 if it wanted to raise a jurisdictional defense in Case 2 lest it be accused of admitting to jurisdiction in all Blue State cases by maintaining its claims in Case 1.

The Court can discern no reason to foist such an unpalatable choice on parties in Defendants' shoes. Perhaps more disturbingly, Plaintiffs' rule would incentivize similarly situated parties to, after being sued in the proverbial Green State, file a separate action in Blue State and seek transfer of the first-in-time case simply to push plaintiffs in that case to drop their claims in an effort to preserve defenses. That's inefficient and encourages inappropriate forum shopping. And that's not an acceptable result.

Federal Rule of Civil Procedure 8(d) reinforces that rationale. That rule allows parties to plead alternative claims or defenses (i.e., a party may take two legally inconsistent positions) "either in a single count or defense or in separate ones." Fed. R. Civ. P. 8(d). If it's permissible to argue two incompatible positions (think promissory estoppel and breach of contract claims) within the same pleading, it's *a fortiori* acceptable to take different

litigated contemporaneously." Id. That inseparability, however, is not present when a par-

ty seeks a venue change, and only later contests personal jurisdiction.

stances on an issue in two different cases (assuming, of course, that collateral estoppel principles don't apply),[12] particularly where one of them originated in a different forum entirely.

Because (1) Defendants' motion to transfer in Case 13 waived no 12(b) defenses other than improper venue, and (2) their litigation conduct does not otherwise trigger a waiver finding, the Court proceeds to consider the merits of their personal jurisdiction defense to Case 13's continued maintenance.

## B. Personal Jurisdiction

 "A federal court sitting in diversity[13] undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." Diamond Crystal Brands, Inc. v. Food Movers Int'l Inc., 593 F.3d 1249, 1257–58 (11th Cir. 2010) (footnote added). Each step of that inquiry is unique since the Georgia statute

"does not grant courts in Georgia personal jurisdiction that is coextensive with procedural due process. Instead, the long-arm statute must be read literally. It imposes independent obligations that a plaintiff must establish for the exercise of personal jurisdiction that are distinct from the demands of procedural due process." Id. at 1259.

### 1. Georgia's Long-Arm Statute

As pertinent to this case, the Georgia long-arm statute provides that:

[a] court of this state may exercise personal jurisdiction over any nonresident or his executor or administrator, as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he were a resident of the state, if in person or through an agent, he:

(1) Transacts any business within this state.

O.C.G.A. § 9–10–91(1).[14]

 "Under Georgia law, the 'transacts any business' provision in § 9–10–

12. It is conceivable that a party could be precluded from raising an issue in one case because it was actually litigated and decided in a previous action involving the same parties. Aqeel v. Cach LLC, No. 1:15–cv–2158–WSD, 2016 WL 5334751, at *2 (N.D. Ga. Sept. 22, 2016) (for collateral estoppel to preclude re-adjudication of an issue, the party asserting preclusion must show "(1) an identical issue, (2) between identical parties, (3) was actually litigated and (4) necessarily decided, (5) on the merits, (6) in a final judgment, (7) by a court of competent jurisdiction"). The existence of personal jurisdiction almost certainly will not be such an issue if for no other reason than it usually is a claim, conduct, and situation specific inquiry unique to each case. Regardless, Plaintiffs never press a preclusion position, so the Court abstains from addressing that argument.

13. Diversity jurisdiction under 28 U.S.C. § 1332 provides the only basis for this Court's

exercise of authority in this case, which involves only state law claims. See doc. 161. No party argues otherwise. See, e.g., id. at 3 ("This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)....").

14. Plaintiffs also contend that Perrigo committed acts that trigger § 9–10–91(3), which permits jurisdiction when a nonresident "[c]ommits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state." O.C.G.A. § 9–10–91(3); doc. 168 at 25-26. Case 13's complaint, however, includes no tort allegations-only ones related to a contract (the Sergeant's Agreement). See doc. 161. Despite this dispute's patent infringement-related underbelly,

91(1) grants personal jurisdiction over a non-resident defendant if '(1) the nonresident defendant has purposefully done some act or consummated some transaction in [Georgia].... Aero Toy Store, LLC v. Grieves, 279 Ga.App. 515, 631 S.E.2d 734, 737 (2006)." Henriquez v. El Pais O'Hubocali.com, 500 Fed.Appx. 824, 828 (11th Cir. 2012). Satisfying subsection (1) thus "depends on the actual transaction of business—the doing of some act or consummation of some transaction—by the defendant in the state." Diamond Crystal Brands, 593 F.3d at 1260. At times, that requirement may preclude jurisdiction where due process would otherwise approve its exercise. See id. at 1262. "Ultimately ... courts [must] ... delineate the precise contours of the " '[t]ransacts any business within this state' requirement of O.C.G.A. § 9–10–91(1) according to the facts of each case." Id. at 1263.

■■■■■ To "transact business" in Georgia, "a defendant need not physically enter the state. As a result, a nonresident's mail, telephone calls, and other "intangible" out-of-state acts must be considered, id. at 1264 (citing Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank of Ames, 279 Ga. 672, 674–75, 620 S.E.2d 352 (2005)), though "mere telephone or mail contact ... is insufficient," standing alone, "to establish purposeful activity with Georgia." Andrews v. Mazda Motor Corp., No.

1:14–cv–3432–WSD, 2015 WL 1851159, at *3 (N.D. Ga. Apr. 22, 2015). The Court therefore must "examine all of a nonresident's tangible and intangible conduct and ask whether it can fairly be said that the nonresident has transacted any business within Georgia." Diamond Crystal Brands, 593 F.3d at 1264.

■■■■ Defendants blur the lines between the long-arm statute and due process analyses by arguing on the one hand that "there is no transaction in Georgia," and on the other that business Perrigo transacted in Georgia in 2011 cannot constitute sufficient jurisdictional contacts because they do not relate to the conduct that forms the basis of Plaintiffs' claims. Doc. 165-1 at 21-23. That's understandable since Innovative Clinical and other cases makes clear that courts may not exercise jurisdiction under § 9–10–91(1) unless a plaintiff's cause of action arises out of the transaction at issue. See 279 Ga. at 675, 620 S.E.2d 352 ("[W]e accordingly construe subsection (1) as reaching only to the maximum extent permitted by procedural due process.") (quotes omitted). Still, as Diamond Crystal Brands makes equally clear, a "transacts business" inquiry is wholly distinct from an analysis of whether a given transaction amounts to sufficient forum contact to satisfy due process constraints. 593 F.3d at 1261 ("[Laterally transacting business within Georgia remains a precon-

see Quikrete Companies, Inc. v. Nomix Corp., 705 F.Supp. 568, 571 (N.D. Ga. 1989) ("For purposes of establishing Long Arm jurisdiction, patent infringement constitutes a tort."), aff'd, 34 F.3d 1078 (Fed. Cir. 1994), § 9–10–91(3) simply does not apply. See Chemtall, Inc. V. Citi–Chem, Inc., 992 F.Supp. 1390, 1401 (S.D. Ga. 1998) (applying § 9–10–91(1) to contract claims and § 91(3) to tort claims); Unistrut Ga., Inc. v. Faulkner Plastics, Inc., 135 Ga.App. 305, 306, 217 S.E.2d 611 (1975) (when a complaint pleads only contract claims, personal jurisdiction cannot be based on "tortious injury" under § 9–10–91(3)).

That provision, however, may reach conduct independent of actions which satisfy due process. If it operates to do so, it "preclude[s] a Georgia court from exercising personal jurisdiction over [a] nonresident to the fullest extent permitted by [the Constitution.]" Byrd v. Drive Elec., LLC, No. CV415–120, 2016 WL 3964239, at *4 (S.D. Ga. July 20, 2016) (quoting Innovative Clinical, 279 Ga. at 674, 620 S.E.2d 352). Neither side cites subsections (2), or (4)-(6) (with good reason-none apply).

dition to long-arm jurisdiction that is independent from the dictates of due process.").

The Case 13 Complaint alleges that (1) Perrigo Co. is a Michigan citizen; (2) Perrigo Animal Health is a Michigan and Nebraska citizen; (3) Velcera is a Delaware and Nebraska citizen; (4) FidoPharm is a Delaware and Nebraska citizen; and (5) Merial is a Georgia citizen. Doc. 161 at 2–3. It also conclusorily alleges that "[t]his Court has personal jurisdiction over the parties," and that "[d]efendants may be found or transact affairs in this District." Id. at 3–4.

Beyond that, Plaintiffs plead that "[i]n or around early 2011, Sergeant's began selling, including within ... Georgia ... a generic version of Frontline Plus" (doc. 161 at 7),[15] and that Defendants currently sell 329 Patent-infringing products in the United States. Id. at 22. Defendants do not directly contest those allegations. They instead elide the sales aspect of the sales allegation and focus on its timing (2011). See doc. 165-1 at 22. Although timing is relevant to the due process and "arising from" analyses (see infra) a sale is a sale and a sale is transacting business under any definition of that term. See, e.g., Sarvint Techs., Inc. v. Omsignal, Inc., 161 F.Supp.3d 1250, 1259 (N.D. Ga. 2015) (sale of seven products to Georgia consumers and operation of "a website that allows residents and consumers in Georgia to place orders and purchase allegedly infringing products" constituted transacting business); Thomas v. Strange Eng'g, Inc.,

No. CV111–074, 2012 WL 993244 at *5 (S.D. Ga. 2012) (defendant shipped one product to Georgia and derived revenue from the sale of that product and thus transacted business). Defendants 2011 Georgia sales, then, satisfy § 9–10–91(1)'s "transacting business" requirement.

Potentially out-of-time contacts aside, Plaintiffs also highlight that "both the Sergeant's Agreement and the [Velcera Agreement] were negotiated and executed in Georgia, and both agreements required payments to be made to Merial in Georgia." Doc. 168 at 23. What's more, say Plaintiffs, Defendants "transacted business in this State by presumably paying for commercials to air in Georgia ... directly sponsoring PetArmor-Plus-related posting[s] on Georgia blogs," and maintaining PetArmor Plus product registrations with the Georgia Department of Agriculture. Id. at 24.

 It's true that Merial's attorneys negotiated and executed the Sergeant's and Velcera Agreements in Georgia. See doc. 165-2 at 6. But Defendants' lawyers sat in Texas (Sergeant's Agreement) and Pennsylvania (Velcera Agreement) for those discussions. See doc. 171 at 18. And mere negotiation—consisting of nothing more than email and phone traffic directed to lawyers in Georgia—cannot alone constitute transacting business for purposes of § 9–10–91(1). See Life University, Inc. v. Brain Synergy Institute, LLC, No. 1:13–cv–1741–SCJ, 2014 WL 12543916, at *4 (Feb. 7, 2014) ("[T]he Court finds that mere negotiations (without a future

---

**15.** Plaintiffs also allege that Velcera and FidoPharm intervened in other litigation and admitted that "they were responsible for importing [a 329 Patent-infringing] product[ ] to the United States market." Doc. 161 at 11. That litigation began because Plaintiffs became aware that a third-party (Cipla) had violated a 2008 injunction by "importing and/or offering for sale in the United States, including within the State of Georgia," infringing products. Id. at 10. Although Cipla arguably transacted business in Georgia by importing product into the state, none of the allegations of admissions by Defendants in this case include mention of Georgia, only the United States. As discussed below regarding Sergeant's 2011 sales, that's not enough to satisfy § 9-11-91(1) or due process.

course of conduct or executed agreement) do not support personal jurisdiction under the Georgia Long-Arm statute's transacting business section."); Catholic Stewardship Consultants, Inc. v. Ruotolo Assocs., Inc., 270 Ga.App. 751, 754, 608 S.E.2d 1 (2004) (directing "telephonic and electronic mail contacts to Georgia from outside the state ... in and of itself, has consistently been held insufficient to establish the jurisdiction of the Georgia courts over a nonresident defendant"). Contracting with a party who itself resides in Georgia for an agreement that is "governed, interpreted and construed in accordance with" Georgia law also does not alone give rise to a Georgia-based business transaction.[16] See Yukon Partners, Inc. v. Lodge Keeper Group, Inc., 258 Ga.App. 1, 5, 572 S.E.2d 647 (2002); doc. 161-1 at 6 (Sergeant's Agreement); doc. 161-2 at 6 (Sergeant's Agreement Amendment); doc. 161-3 at 10 (Velcera Agreement). Most importantly, neither the Velcera nor Sergeant's Agreements call for Defendants' performance in Georgia.[17] See Yukon Partners, 258 Ga. App. at 5, 572 S.E.2d 647 (management agreements negotiated between Missouri and Ohio entities that called for performance in Missouri, Kansas, and Oklahoma did not constitute transacting business in Georgia); doc. 165-2 ("[A]ll the implementation of [the Sergeant's Agreement] was done in Nebraska.").

For the Sergeant's Agreement to support jurisdiction, then, telephone calls and emails to a Georgia resident, plus a choice-of-law clause would have to suffice to show that Defendants did "some act" or consummated "some transaction" *in Georgia.* Diamond Crystal Brands, 593 F.3d at 1260. But two out-of-state acts cannot combine to create in-state conduct, and neither the negotiations or the clause occurred in Georgia. At best, they show that Defendants transacted business with a Georgia resident. Hence, neither the agreements nor their creation processes satisfy § 9–10–91(1).[18]

■■■ Plaintiffs' paid commercials, Georgia blog, and pesticide registration arguments also presume too much. Pure speculation—which is precisely what Plaintiffs ply regarding Defendants' advertising purchases—cannot serve as "evidence sup-

---

**16.** Importantly, the Sergeant's and Velcera Agreements' choice-of-law provisions are *not* forum selection clauses-they never specify that any claims arising from the contracts shall be litigated in Georgia courts.

**17.** Plaintiffs insist that both agreements call for Defendants to pay Merial in Georgia. See doc. 168 at 23. If true, that would almost certainly constitute transacting business in Georgia (payment, whether for services, goods, or a promise not to sue, strongly evidences business transactions). But neither agreement says as much. Instead, they both call for Defendants to pay Merial without specifying where. Cf. Walden v. Fiore, —— U.S. ——, 134 S.Ct. 1115, 1122 (for due process purposes, the relevant minimum contacts are a "defendant's contacts with the forum state itself, *not* the defendant's contacts with persons who reside there") (emphasis added). Nor do they contain any provision that indi-

cates Georgia performance by Defendants. Under the terms of the agreements, Defendants' payments may well have been to Merial bank accounts in Tahiti for all the Court knows.

Plaintiffs' own filings show that Defendants did not, in fact, make payments in Georgia. For at least one, they wire transferred "Velcera Settlement Payments" to a Merial account with Citibank, N.A. located in New York City. Doc. 168-2 at 3.

**18.** The Court recognizes that the present motion relates only to Case 13 and thus only to the Sergeant's Agreement. Plaintiffs' claims allege breach of that contract, not the Velcera Agreement, and so the latter cannot, regardless of negotiation or performance location, give rise to jurisdiction in Case 13. Nevertheless, the analysis above includes the Velcera Agreement because it underscores Defendants' lack of Georgia-transacted business.

porting jurisdiction." United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009); see also United States v. Clay, 832 F.3d 1259, 1294, 2016 WL 4254355, at *26 (11th Cir. 2016) (in civil rights case challenging Georgia's use of certain drugs during executions, "mere speculation ... cannot substitute for evidence that the use of the drug is sure or very likely to cause serious illness and needless suffering"). What's more, from the print version of the ad (which aired on television), it's apparent that the ad buy was national and not targeted to a particular state. See doc. 167-7 at 8 (commercial aired on April 15, 2016 on the Lifetime channel during a show called "Unsolved Mysteries," and has aired nationally 1,168 times). At most, Plaintiffs' attachment shows intent to target consumers across the nation. That's not transacting business in Georgia unless the ad contract called for in-state performance (e.g., the ad agency received payment in Georgia, or a provision provided for ad production in Georgia), and nothing indicates that occurred. See id.

The allegedly incriminating blog post (on the blog "Simply Southern Mom," which is apparently authored by one Georgia and two Tennessee residents)[19] "sponsored by Perrigo" (doc. 167-8 at 2), meanwhile, offers nothing to suggest that Defendants transacted business in Georgia. Blogs can be read from anywhere (such is the nature of Internet), not just where their authors live. Their universal accessibility makes them particularly ill-suited as evidence either that a defendant transacted business in a given forum, or that it possessed the minimum contacts needed to satisfy due process (see infra). Compounding that, no record evidence suggests that any sponsorship transaction between the blog and Defendants occurred in Georgia, as would be necessary to satisfy § 9–10–91(1). As with the Sergeant's Agreement, then, the blog at best evidences Defendants transacting business with a Georgia resident (or perhaps also her two Tennessee co-bloggers).

Maintaining PetArmor Plus product registrations with the Georgia Department of Agriculture likewise does not constitute transacting business. Id. at 24. Certainly Georgia requires registration if a company wants to distribute a pesticide in the state, see O.C.G. A. § 2–7–55, but registering alone is not proof that a company in fact distributed their product. A company could quite conceivably register a product and later decide not to distribute their product in state.[20] Or, they could register the product and then sell it out-of-state to a national distributor who then decides where to actually sell the product in a retail environment.[21] In that situation, no business transaction has taken place in Georgia.

---

19. Plaintiffs filed screen shots of the blog post (doc. 167-8), but those included no information identifying the authors' residency (it said only that they were a "Georgia blogging team," doc. 168 at 17). The Court independently ascertained their residencies by visiting the blog. Doing so played no determinative role in the above analysis. It does, however, serve to highlight (1) the paucity of information about the blog provided by Plaintiffs, and (2) the inability of the post to serve as a jurisdictional hook.

20. What's more, nothing about the registration indicates when Defendants filed. It expires on December 31, 2016 (see doc. 167-6 at 2), but if filing came before the Sergeant's Agreement's execution the registration categorically could not, much like Defendants' 2011 sales, undergird jurisdiction even if it constituted transacting business. See infra.

21. Plaintiffs make this very argument in the due process "minimum contacts" context. See doc. 168 at 28-29. Whether or not, as Plaintiffs insist, a pesticide registration "clearly show[s] Perrigo's awareness that its products are sold in Georgia," it says nothing about Defendants in-state business transactions.

Examining "all of [Defendants'] tangible and intangible conduct" reveals that Defendants operated a business intended to disburse their product nationally. Diamond Crystal Brands, 593 F.3d at 1264. While that may suffice to show that they could reasonably foresee being hailed into court in all fifty states, foreseeability is not transacting business and may not be imported into the latter's analysis.[22]

Plaintiffs only other business transaction-related allegation involves Defendants' sale of 329 Patent-infringing products in the "United States," not Georgia. Doc. 161 at 22. And that's not specific enough to satisfy § 9–10–91(1). See Askue v. Aurora Corp. of Am., No. 1:10–cv–0948-JEC, 2012 WL 843939, at *3 (N.D. Ga. Mar. 12, 2012). In sum, only Defendants' "early 2011" Georgia sales constitute "transacting business" under § 9-11-91(1). Doc. 161 at 7. That conclusion, however, is only half the story. As discussed above, for both the Georgia long-arm statute and due process, defendants' business transaction must also give rise to the plaintiff's cause of action.

### 2. *Due Process*

Due process provides "the outer boundaries of a" court's "authority to proceed against a defendant." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 923, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011). Courts may exercise jurisdiction over "an out-of-state defendant [only] if the defendant has 'certain minimum contacts with [the State] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Id. (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)); see also id. at 923–24, 131 S.Ct. 2846 ("Adjudicatory authority is 'specific' when the suit arises out of or relates to the defendant's contacts with the forum.") (alterations and quotation marks omitted). In more practical terms, that means that jurisdiction exists where (1) "[a] corporation's in-state activity is 'continuous and systematic' and that activity gave rise to the episode-in-suit'" id. (emphasis omitted); (2) a "single or occasional act[ ]" in-state spawns an alleged injury, id.; or (3) "corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." Id. at 924, 131 S.Ct. 2846. The first two situations constitute "specific jurisdic-

---

**22.** The Eleventh Circuit caution[s] the federal courts of this circuit to resist any temptation to define "[transacts any business" solely or primarily in terms of the "foreseeability" of an impact on the Georgia forum a concept frequently featured in the due process "minimum contacts" analysis. To do so would once again improperly conflate the long-arm and due process inquiries. Unlike the due process analysis, O.C.G.A. § 9–10–91(1), on its face, includes no element of "foreseeability." Although we do not go so far as to say that the "foreseeability" of an impact on the forum can never be a relevant consideration, there may be many instances in which such notions of "foreseeability" have absolutely no bearing on whether particular conduct can fairly and plausibly constitute the transaction of business in the state. Accordingly, engrafting a "foreseeability" component, which the Georgia General Assembly has not seen fit to include, onto the subsection (1) long-arm requirement would amount to just the sort of extension of the long-arm statute beyond its literal terms that the Georgia Supreme Court rejected in Innovative Clinical. See Innovative Clinical, 620 S.E.2d at 354, 355. Instead, regardless of their preferences or attempts to resort to analytical shortcuts, our courts must be limited to the bare language of the statute. Under subsection (1), analyzing whether the nonresident defendant "[transacts any business within this state" is the sole touchstone of long-arm jurisdiction. Diamond Crystal Brands, 593 F.3d at 1263 n.15.

tion,"[23] while the third describes "general jurisdiction."[24]

In specific jurisdiction cases, courts inquire "whether there was 'some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " Id. (quoting Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). "Specific or case-linked jurisdiction depends on an affiliatio[n] between the forum and the underlying controversy (i.e., an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation)." Walden v. Fiore, —— U.S. ——, 134 S.Ct. 1115, 1121 n.6, 188 L.Ed.2d 12 (2014) (quotations and citations omitted). As critically, "minimum contacts analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." Id. at 1122; see also id. ("[T]he plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that

must form the necessary connection with the forum State that is the basis for its jurisdiction over him."); Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot.").

The only in-state defense conduct the Complaint alleges that qualifies as "transacting business" (and thus the only conduct that justifies jurisdiction under the Georgia long-arm statute) are Defendants' "early 2011" sales of 329 Patent-infringing product. Doc. 161 at 7. If that conduct bears relationship to Plaintiffs' claims in this case, the Court may exercise jurisdiction over Defendants.[25]

Plaintiffs assert two substantive claims—1) breach of the Sergeant's Agreement; (2) breach of the implied covenant of good faith and fair dealing related to Ser-

---

**23.** Plaintiffs incorrectly assert that a defendant must engage in "continuous and systematic" conduct "directed to Georgia" for the Court to exercise specific jurisdiction. Doc. 165-1 at 19; doc. 171 at 15. True, such contacts, when they give rise to the claims in a given case, will support specific jurisdiction. Goodyear, 564 U.S. at 924, 131 S.Ct. 2846. But they are not necessary to its exercise. Jurisdiction will still be proper under § 9–10–91(1) and satisfy due process if a corporation engages in a single in-state transaction and that transaction undergirds the plaintiff's claims. Id.; cf. Catholic Stewardship Consultants, 270 Ga.App. at 755, 608 S.E.2d 1 (party performed a project in Georgia, "but because [that] activity had no connection with [plaintiff]'s claim and was an isolated contact with the state, it is insufficient to support the jurisdiction of the Georgia court ... in this case"). The textbook case involves a company truck passing through a state in which the company has no other contacts. The truck rear ends a state resident, who then sues. Personal jurisdiction over the company is proper despite

the lack of continuous and systematic contacts because the company's singular act of availment resulted in the resident's claims.

**24.** Plaintiffs do not contest the conclusion that the Court lacks general jurisdiction over Defendants. See doc. 168 at 21-32 (arguing only that the Court possesses specific jurisdiction over Defendants). The Court accordingly analyzes only specific jurisdiction.

**25.** A brief word about the corporate relationships between the individual defendants: Sergeant's, Velcera, and FidoPharm, Inc. all lacked affiliation with Perrigo when the parties executed the Sergeant's and Velcera Agreements. Although Plaintiffs' claims revolve around breach of those agreements, Perrigo has since purchased both Velcera and Sergeant's and in doing so assumed the liabilities of each. Doing so exposes it to jurisdiction for acts that other entities committed prior to Perrigo's ownership. No party disputes that conclusion.

geant's Agreement breaches—and seek two declaratory judgments: (1) that Defendants are bound by the Sergeant's Agreement to refrain from "making, using, selling, or offering for sale in the United States" any 329-Patent infringing products; and (2) that Plaintiffs' own conduct "does not constitute a breach or threatened violation . . . of the Velcera Agreement." Doc. 161 at 27-32. Defendants' 2011 conduct cannot possibly relate to the Velcera Agreement count because the parties did not execute that contract until 2012. That leaves Sergeant's Agreement counts as possible jurisdictional hooks.

None qualify. Although the complaint alleges only that Defendants "began selling, including within the State of Georgia," a 329-Patent infringing product in "early 2011," subsequent allegations make clear that activity predated the Sergeant's Agreement. Doc. 161 at 7. Indeed, the conduct was the *but for cause* of the Sergeant's Agreement. See id. ("In or around April 2011, to induce Merial. . . not to file suit against Sergeant's for infringement of the '329 Patent, Sergeant's proposed [the Sergeant's Agreement] . . . ."). By predating and instigating the agreement, Defendants' 2011 conduct necessarily cannot have breached the Sergeant's Agreement (count one), breached Defendants' good faith and fair dealing obligations (count two), or formed the basis for any genuine dispute about Defendants' obligations under the Sergeant's Agreement (count three).

Put differently, Defendants' early 2011 Georgia sales bear no connection to Plaintiffs' claims in this case. Despite satisfying § 9-10-91(1)'s transacting business re-

quirement, that conduct thus fails to give rise to Plaintiffs' claims. And that means it cannot satisfy either the Georgia long-arm statute or due process' minimum contacts requirement. See O.C.G.A. § 9-10-91; Goodyear, 564 U.S. at 924, 131 S.Ct. 2846.

Plaintiffs point to prior Georgia cases involving Defendants, as well as their website, to argue that Defendants "purposefully directed [their] activities at [Georgia] residents . . . and th[is] litigation resulted] from alleged injuries that arise out of or relate to those activities." Doc. 168 at 28 (quoting Burger King, 471 U.S. at 472-73, 105 S.Ct. 2174). Maybe they did. If so, due process poses no barrier to jurisdiction. But the Georgia long-arm statute does. It requires in-state business transactions, something that a website which offers no purchase mechanism,[26] and lawsuits cannot satisfy. The same is true for Plaintiffs' "effects test" argument. Doc. 168 at 30. Even if Defendants' advertising that reaches Georgia residents and product that those residents buy harms Plaintiffs, that harm does not itself evidence transacting business in Georgia.

### 3. *Jurisdictional Discovery*

In lieu of dismissal, Plaintiffs, in their response brief, ask the Court to allow them to conduct discovery "to confirm the business that Perrigo has transacted in Georgia." Doc. 168 at 26. It's true that as a general proposition, a "plaintiff should be given the opportunity to discover facts that would support his allegations of jurisdiction." Majd–Pour v. Georgiana Cmty. Hosp., Inc., 724 F.2d 901, 903 (11th Cir. 1984). But no abuse of discretion exists if a court dismisses "the plaintiff's action for lack of personal jurisdiction, even before

---

**26.** Not only can visitors to Perrigo's website not purchase Pet Armor Plus there, if they click on the "shop now" link, they are redirected to a pop-up window that shows information provided by a third-party website. See doc. 171 at 17 n.8; doc. 167-4 at 1. Only if the person then clicks through to a retailer's website can they purchase PetArmor. Again, whether or not that satisfies due process, it does not constitute transacting business.

jurisdictional discovery occurs, when the plaintiff has not diligently pursued such discovery despite the opportunity to do so." Henriquez v. El Pais O'Hubocali.com, 500 Fed.Appx. 824, 830 (11th Cir. 2012) (citing United Technologies Corp. v. Mazer, 556 F.3d 1260, 1280–81 (11th Cir. 2009)).

In Mazer, the court affirmed dismissal without allowing discovery because the plaintiff "recognized the potential utility of jurisdictional discovery at least by the time it filed its response to [defendant's] motion to dismiss," yet "never formally moved the district court for jurisdictional discovery." 556 F.3d at 1280. Instead, the plaintiff "buried such requests in its briefs as a proposed alternative to dismissing [defendant] on the state of the current record," and took no "formal action to compel discovery. "Id. at 1280–81. Plaintiff, said the court, "should have taken every step possible to signal to the district court its immediate need for such discovery." Id. at 1281. It did not, so the district court "did not so much deny discovery as it dismissed the case before discovery was taken." Id. Doing so was not error, much less an abuse of discretion. Id.

Plaintiffs here have never moved for jurisdictional discovery. Like the Mazer plaintiff, they buried their one paragraph request in a response brief (doc. 168 at 26-27) as an alternative to granting Defendants' motion. Filed April 1, 2016 (doc. 164), and responded to on April 18, 2016 (doc. 167), that motion was submitted to the Court for review on May 6, 2016. Since then, Plaintiffs have made no move for discovery. The failure to do so fatally undermines their "as an aside" request now.

## IV. CONCLUSION

Because (1) Defendants never waived their right to challenge personal jurisdiction, and (2) Plaintiffs failed to "to produce evidence supporting jurisdiction," Diamond Crystal Brands. 593 F.3d at 1257, the Court **GRANTS** Defendants' motion to dismiss. Doc. 164. The Clerk is **DIRECTED** to terminate Civil Action No. 1:15–cv–13. The Clerk also is **DIRECTED** to seal doc. 161 in Civil Action No. 1:15-cv-3674, as well as doc. 3 in Civil Action No. 1:15–cv–013. The Court **DENIES** Plaintiffs' motion for leave to file a surreply (doc. 173), and **GRANTS** both parties' dismissal motion-related motions to seal. Docs. 166; 169; 172.

**IT IS SO ORDERED.**